## CRAWLEY *v.* THE STATE.

1. The defendant's statement and the testimony of certain witnesses introduced by him put in issue the character of the decedent, and the court properly admitted evidence offered by the prosecution to show the character of the deceased as to peaceableness and violence.
2. The court did not err in charging the jury as follows: "Proof of the violent and turbulent character of the deceased is admissible only when it is shown prima facie that the deceased was the assailant, that the accused had been assailed, and that the defendant or defendants was honestly seeking to defend himself or themselves. But if you find from the evidence that the defendants were the aggressors, and that the defendants overtook the deceased, and one of them began or entered into a difficulty with the deceased with a preconceived intent of having a difficulty, or began the attack without provocation from the deceased, if he was a bad character, then the bad character of the deceased would not offer the defendant any excuse for taking his life, if he or they took his life; for it is the same offense to kill a bad person as it is to kill a good person." This charge aptly stated the law as to the issue therein dealt with, and was authorized by the evidence.
3. While the charge of the court upon the subject of justifiable homicide as laid down in §§ 70 and 71 of the Penal Code was not entirely free from criticism, lacking both in comprehensiveness and accuracy, it was

not, under the evidence and the statement of the prisoner, such error as to require the grant of a new trial, especially in view of the fact that the court fully covered the law of justifiable homicide as laid down in the code sections just referred to.

4. Even if the admission in evidence of a "no bill" returned by the grand jury against the decedent, charged with the murder of a brother of the defendant, was irrelevant, it was not of sufficient materiality to be ground for a reversal.

5. The charge fully covered and fairly submitted the material issues in the case, and the evidence authorized the verdict of guilty.

6. There was no abuse of discretion in refusing to grant a new trial upon the newly discovered evidence submitted to the court.

MARCH 13, 1912.

Indictment for murder. Before Judge Daniel. Pike superior court. June 23, 1911.

*J. F. Redding, E. F. Dupree, E. M. Owen,* and *T. E. Patterson,* for plaintiff in error. *T. S. Felder, attorney-general, J. W. Wise, solicitor-general,* and *Cleveland & Goodrich,* contra.

BECK, J. Jim Crawley was jointly indicted with Reginald Crawley and Stiles Mitchell for the murder of William Carden. The three defendants were tried together, and Stiles Mitchell and Reginald Crawley were acquitted. Jim Crawley was convicted, the jury recommending that he be imprisoned in the penitentiary for life. A motion for a new trial was filed by Jim Crawley, and upon the hearing it was overruled. The only eye-witnesses to the killing, who were near enough to see and hear all that occurred, were the three defendants named in the indictment. Each of these made a statement tending to show that at the time of the shooting the decedent was attempting to feloniously attack one of the three defendants, who were riding together in a buggy, with intent to shoot and kill one or both of the Crawleys, who are brothers.

1. The court properly permitted counsel for the State to introduce evidence tending to develop before the jury the question as to whether the slain man was a man of a peaceable or a violent disposition and character. The privilege of showing the character of the deceased in the first instance was the prerogative of the defendant alone. But the defense had shown, before the State attempted to introduce such evidence, that the deceased had made numerous threats against the life of the accused; and the accused in his statement declared that the decedent was a dangerous man, "and I knew he would shoot me the first chance he got. . . He had threatened to do it so many times to so many people who had told

me, lots of them. I could take hours of your time and give you the names and what he told them. . . Now, going back to the time when Mr. Carden shot and killed my brother, I want to say he has hounded me around and made these threats, which have come to me from all directions, that he was going to kill me." Then follows, in the statement of the prisoner, a further enumeration of instances when he was waylaid by Carden and his footsteps were pursued; instances showing that Carden was a man of violent character, and relentless in his determination to finally take advantage of a fitting opportunity for the purpose of slaying the accused. Witnesses had been introduced before this statement was made, who gave testimony corroborating the prisoner's statement in regard to the making of threats against the life of the accused. In no other way could the defense have more effectually put the character of the decedent in issue. It has been held that the defendant can put his own character in issue by his statement alone (*Jackson* v. *State,* 76 *Ga.* 552) ; and if he can put his own character in issue merely by his statement, it would seem that he could put that of the slain man in issue. But the defense did not limit the attack upon the character of the deceased to the defendant's statement. There was proof of circumstances tending to show that Carden was a man of violent character. "Where the defendant has offered evidence of threats against himself made by the deceased, the prosecution has been permitted to introduce evidence of the good character of the latter." 3 Enc. Ev. 14, and cit. After the defense had thus distinctly put the character of the slain man in issue, and had introduced, for the consideration of the jury, testimony which tended to demonstrate that the deceased was a man of violent character, in the interest of truth and for the purpose of aiding the jury in their efforts to reach a correct conclusion as to this material issue the court properly refused to exclude evidence offered to show that the deceased was a man of an entirely different character from that portrayed in the statement of the accused and by his witnesses.

2. Movant insists that the court erred in charging the jury as follows: "Proof of the violent and turbulent character of the deceased is admissible only when it is shown prima facie that the deceased was the assailant, that the accused had been assailed, and that the defendant or defendants was honestly seeking to defend himself or themselves. But if you find from the evidence that the

defendants were the aggressors, and that the defendants overtook the deceased, and one of them began or entered into a difficulty with the deceased with a preconceived intent of having a difficulty, or began the attack without provocation from the deceased, if he was a bad character, then the bad character of the deceased would not offer the defendant any excuse for taking his life, if he or they took his life; for it is the same offense to kill a bad person as it is to kill a good person." We see no error in this charge. It states the law, and the evidence authorized it. There was evidence to authorize the jury to find that Carden was walking peaceably along the public highway, with his coat on his arm, with his back towards the three men approaching him in a buggy, that he was shot in the back of the head; and the prisoner himself stated that when the buggy was within 20 or 25 yards of Carden he recognized Carden. "Of course I thought of the threats he had made towards me." And while this statement, that he thought of the threats, is connected with other statements in which the accused disclaimed any evil intention, the jury were authorized to believe the part that was unfavorable and to disbelieve the other part. They were authorized to believe that, considering his position and the relative position of the three men, the single man would not have been the aggressor against the three. And further, they were authorized to find the existence in the breast of the accused of bitter enmity against the man who was slain. For when the latter was found, he was found dead, with a wound in the back of the head and three wounds in his breast.

3. Exception is taken to the following charge of the court: "If you believe from the evidence that the deceased made a violent assault upon the defendants, such an assault as I have heretofore described, and that at the time the circumstances, as they appeared to him, were sufficient to excite the fears of a reasonable man that his own life and person and that the life and person of his brother were in danger, and he acted under the excitement of such fear and not in a spirit of revenge, and if you believe that the defendant had the right to shoot to save his own life or that of his brother, if you believe this is the truth of the case, you would be authorized to acquit the defendant." The exception is "on the ground, that, this being the summing up of the whole charge by the court, it tended to limit and explain the former parts of his charge that

the jury must believe all three of the theories, that is, that violent assault was being made, and that defendant acted under the influence of the fears of a reasonable man that it was necessary for defendant to shoot to save his own life or that of his brother; and thus a burden greater than that fixed by law was placed upon him; and further that the effect of this charge was, that it was not sufficient that the defendant acted under the fears of a reasonable man that his own life or person or that of his brother was in danger, and not in a spirit of revenge, but that the defendant must show in addition that the truth was that it was necessary to shoot to save his own life or that of his brother; and thus the law as defined in section 71 of the code is excluded or limited in its application to the circumstances of this case, and deprives the defendant of the benefit of this law." This charge is not entirely exempt from the criticisms made upon it, and is not an accurate statement of the law of justifiable homicide as laid down in §§ 70 and 71 of the Penal Code. The jury might have been led to conclude, from the last part of the charge, wherein the court said, "and if you believe that the defendant had the right to shoot to save his own life or that of his brother, . . you would be authorized to acquit the defendant," that this imported an actual necessity for the killing, which is the law applicable to cases falling under § 73 of the Penal Code, and the court was not then dealing with cases of that character. But in the present case we do not think this inaccuracy is sufficient to cause a reversal of the judgment refusing a new trial; because, in the excerpt with which we are now dealing, the court briefly but accurately summed up the contentions of the defendant himself, as made in his statement, and instructed the jury that if these contentions were true, the defendant should be acquitted. The defendant in his statement said that Carden had threatened him, had in many instances shown an intent to take the life of the accused, had pursued him and dogged his footsteps; that at the time of the killing, when the buggy occupied by the defendant and his companions was about to pass Carden on the right, the defendant thought of the threats which had been made against him by Carden, and hoped to pass Carden without being recognized; and that as the buggy drew abreast of Carden, one of defendant's companions spoke to Carden and said, "Hello, old man, where are you going?" at which Carden turned around very hur-

riedly "and threw his hand to his pocket this way [indicating], and said, 'Damn you, I've got you at last.' . . As Carden threw his hand back that way at his pocket and made the remark, 'Damn you, I've got you at last,' I reached in the foot of the buggy and got up Redge's pistol as soon as possible, and fired three times in quick succession. At that Mr. Carden fell. Then Redge hollered, 'My God,' and jumped out of the buggy and started towards Mr. Carden. As he did that, Mr. Carden came up again and said, 'Damn you, I will get one of you.' Then I fired over the back of the buggy the fourth shot, and Mr. Carden fell." And then, after referring to a brief conversation and to their departure from the spot, the defendant added: "Gentlemen, as Mr. Carden made attempt to get his gun, I could not take any chances. I didn't have time to wait to see whether he was going to shoot. I knew he was a dangerous man and would shoot me the first chance he got, and as quick as possible I reached and got Redge's pistol and shot Mr. Carden from the buggy. I shot him in self-defense, in defense of myself and defense of my brother. As I stated, I had rather have run from him the balance of my life than to kill him. Still I could not take any chances. I wanted to live myself. I appreciated my life, and didn't want him to kill me. I knew at that time he meant to do it. . . I had to shoot Mr. Carden to save myself and my brother." Upon reading this extract from the statement of the prisoner, it is clear that the court, in stating that if the defendant shot to save his own life or that of his brother the jury would be authorized to acquit him, made a succinct and palpably true statement of the law as applicable to that part of the case. And that being true, we do not think that the mere fact that the excerpt from the charge of the court, set forth in the ground of the motion with which we are concerned, considered as an abstract charge of the law of justifiable homicide as contained in the Penal Code, §§ 70, 71, is not entirely accurate, should work a reversal in this case; especially in view of other portions of the court's charge wherein he had fully and explicitly given the defendant the benefit of the doctrine of reasonable fears. Thus the court charged: "While provocation by words, threats, menaces, or contemptuous gestures will in no case be sufficient to reduce a homicide below the grade of murder, I charge you that while words, threats, or menaces will not mitigate the offense, and while even the heat of passion

supposed to be irresistible presents no excuse for homicide, nevertheless words, threats, or menaces may justify a killing if the circumstances be such as to reasonably arouse the fear of a reasonable man that a felony is about to be committed upon him. And in this case, as in all cases, the motive that actuated the slayer is for your determination, and it is for you to say whether or not the circumstances were sufficient to justify the existence of such fears; and if you believe, or if you have a reasonable doubt, that the homicide was committed by defendant, Jim Crawley, not in a spirit of revenge, but under the fears of a reasonable man that his life was in danger or that felony was about to be committed upon him, then you will acquit the defendant. . . If the facts and circumstances surrounding defendant at the time of the shooting, if he did shoot, were such as to excite the fears of a reasonably courageous man that a felonious assault was intended or might be inflicted upon him, and he shot under the influence of those fears, the verdict should be justifiable homicide, that is, not guilty. . . It would be no excuse for the defendant that he acted under the fear, unless the evidence shows that the circumstances were sufficient at the time the fatal shot was fired to excite the fear of a reasonably courageous man that a felony was then about to be committed upon him by the deceased; and it must appear that the defendants really acted under the impression of those fears in doing the killing, and not in a spirit of revenge. The defendants would be justifiable, however, whether in fact there was any real danger or not, if the circumstances proven were sufficient to excite the fears of a reasonable man that a serious bodily injury amounting to a felony was about to be inflicted upon them, or one of them, at the time the fatal shot was fired."

4. Even if the admission in evidence of a "no bill" returned by the grand jury of the county in the case of William Carden (the decedent), charged with the murder of Virgil Crawley (a brother of the defendant), was irrelevant, it was not of sufficient materiality to be ground for a reversal. We do not see how this paper could have prejudiced the minds of the jury against the Crawleys on trial.

5, 6. The rulings made in headnotes 5 and 6 require no discussion.                    *Judgment affirmed. All the Justices concur.*