S98A1187. JOHNSON v. THE STATE.
(507 SE2d 737)

CARLEY, Justice.

A jury found Kelvin Johnson guilty of the malice murder of Ricky Harris, and of the possession of a firearm during the commission of that crime. After entering judgments of conviction on the guilty verdicts, the trial court sentenced Johnson to life for the murder and to a five-year term for the possession of a firearm offense. Following the denial of his motion for new trial, Johnson brings this appeal.[1]

1. Johnson and Harris had a history of animosity. One apparent basis for the friction was jealousy, as Harris was the former boyfriend of Johnson's current girlfriend. Also, Johnson suspected that Harris was responsible for some damage to Johnson's car. On the day before the homicide, Johnson started several fist fights with Harris and, in addition, he made threats to kill Harris. The next morning, as Harris walked to the school bus, Johnson confronted him and fired one shot. After Harris fell, Johnson stood over him and fired a second shot into his head. Either shot could have been the cause of Harris' death. This evidence is sufficient to authorize a rational trier of fact to find proof beyond a reasonable doubt that Johnson was guilty of both the malice murder of Harris and the possession of a firearm during the commission of that crime. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Lowe v. State,* 267 Ga. 410, 411 (1) (a) (478 SE2d 762) (1996).

2. Several of the State's witnesses were friends of Harris. In ruling on the State's motion in limine, the trial court held that, on cross-examination of these witnesses, Johnson could refer to them and Harris "as a group and maybe even a gang as long as we understand we're talking about just these four people." However, the trial court also ruled that, before Johnson could refer to Harris and the State's

---

[1] The homicide occurred on January 10, 1992. The grand jury indicted Johnson on June 2, 1992, and the jury returned its guilty verdicts on December 5, 1995. On December 6, 1995, the trial court entered the judgments of conviction and sentences. On December 20, 1995, Johnson filed his motion for new trial and, on March 31, 1998, the trial court denied that motion. Johnson filed his notice of appeal on April 7, 1998 and, on April 22, 1998, the case was docketed in this Court. The appeal was submitted for decision on June 5, 1998.

witnesses as members of a larger group or club comprised of "other third parties that are not going to testify . . ., I think we need to talk about that." Thereafter, Johnson made no proffer of any evidence showing that Harris and the State's witnesses were part of a gang which included other members.

Johnson enumerates the trial court's ruling on the motion in limine as an erroneous curtailment of his right to cross-examine the State's witnesses. Although a defendant is entitled to a thorough and sifting cross-examination as to all relevant issues, the trial court, in determining the scope of relevant cross-examination, has a broad discretion. *Moore v. State*, 251 Ga. 499, 501 (2) (a) (307 SE2d 476) (1983). The trial court did not preclude all inquiry by Johnson into the topic of gang membership. Compare *Hines v. State*, 249 Ga. 257, 260 (2) (290 SE2d 911) (1982). It simply limited cross-examination into that topic until Johnson made a proffer that a more extensive inquiry was relevant. See *Cofield v. State*, 247 Ga. 98, 111 (6) (274 SE2d 530) (1981); *Crawford v. State*, 154 Ga. App. 362, 363 (2) (268 SE2d 414) (1980). Johnson had the chance to show that Harris and the State's witnesses were members of a larger gang and that such membership was relevant to the defense, but he did not avail himself of that opportunity. Under these circumstances, the trial court did not abuse its discretion. See *Ashley v. State*, 263 Ga. 820, 823 (3) (c) (439 SE2d 914) (1994).

3. Johnson did not give the State timely written pretrial notice of his intent to introduce evidence of any prior acts of violence committed by Harris. Invoking Uniform Superior Court Rule 31.6 (A), the State made a motion in limine to preclude Johnson from introducing evidence of Harris' specific prior violent acts which were not within the res gestae of the actual homicide. Johnson opposed the motion, contending that he was prepared to introduce evidence that Harris had beaten his former girlfriend who now was in a relationship with Johnson. The trial court granted the State's motion in limine, and Johnson enumerates this evidentiary ruling as error.

The victim's previous difficulties are rarely relevant for any purpose in a criminal proceeding. *Austin v. State*, 268 Ga. 602 (2) (492 SE2d 212) (1997). This is because a crime is no less punishable if committed against a bad person than if it were perpetrated against a good person. *Crawley v. State*, 137 Ga. 777 (2) (74 SE 537) (1912). An exception does exist when the defendant claims justification for his actions and offers evidence that the victim was the aggressor. *Austin v. State*, supra at 602-603 (2). In that limited circumstance, evidence of the victim's prior transactions or occurrences can be relevant to a defense of justification. When an accused seeks to justify an act which otherwise would constitute the crime of murder, the reasonableness of his belief that the use of deadly force against the victim

was necessary is a relevant inquiry. OCGA § 16-3-21 (a). Therefore, if the defendant's res gestae evidence establishes a prima facie justification defense, evidence of the victim's prior acts of violence against the accused, as well as against third parties, may be relevant to corroborate the defendant's contention that he did not act with the requisite criminal intent. *Lewis v. State*, 268 Ga. 83, 84 (2) (485 SE2d 212) (1997); *Chandler v. State*, 261 Ga. 402, 407 (3) (b) (405 SE2d 669) (1991).

Although such evidence may be relevant to a justification defense, it is not always admissible. The admissibility of evidence for this limited purpose is controlled by the provisions of Rule 31.6. Rule 31.6 (A) specifies that a defendant who claims justification is required to give the State timely pretrial notice of his intent to present "evidence of relevant specific acts of violence by the victim against . . . third persons." Thus, Rule 31.6 recognizes that the victim's prior difficulties with third parties is generally inadmissible unless shown to be relevant to a justification defense. The burden was on Johnson to show that evidence of Harris' specific act of violence against his former girlfriend should be admitted to support a justification defense, which burden included a showing that Johnson had satisfied the procedural requirements imposed by Rule 31.6 for introduction of the evidence for that limited purpose. *Laster v. State*, 268 Ga. 172, 174 (2) (486 SE2d 153) (1997). Thus, it is immaterial whether the State was already aware that Harris beat his former girlfriend. The purpose of Rule 31.6 (A) is to provide the State with reasonable notice that Johnson intended to rely upon that occurrence to support a justification defense. *Watkins v. State*, 264 Ga. 657, 662 (4) (449 SE2d 834) (1994). Because the victim's prior difficulties are generally irrelevant and inadmissible, there was no reason why the State should have anticipated that Johnson would support a justification defense with evidence of any specific act of violence committed by Harris against his former girlfriend. Rule 31.6 recognizes the difficulty of rebutting evidence of the victim's specific acts of violence unless timely notice of the defendant's intention to introduce the evidence at trial is given to the State. *Armstrong v. State*, 265 Ga. 18, 19 (2) (453 SE2d 442) (1995). Because Johnson did not comply with this procedural requirement as to the alleged beating of Harris' former girlfriend, the State did not receive the specified ten-day notice of his intent to rely upon that event as evidence to support a claim of self-defense. Therefore, consistent with Rule 31.6 (A), the trial court held that Johnson could not support a justification claim by introducing evidence of that specific prior act of violence allegedly committed by Harris. See *Barnes v. State*, 269 Ga. 345, 353 (14) (496 SE2d 674) (1998); *Armstrong v. State*, supra at 19 (2); *Watkins v. State*, supra at 662 (4); *Mullins v. State*, 224 Ga. App. 218 (2) (480 SE2d 264) (1997).

Compliance with Rule 31.6 is mandatory. *Wellons v. State*, 266 Ga. 77, 86 (12) (463 SE2d 868) (1995). In the exercise of its discretion, the trial court is authorized to shorten or lengthen the ten-day notice requirement. *Thaxton v. State*, 260 Ga. 141, 144 (6) (390 SE2d 841) (1990). However, Johnson offered no excuse for failing to comply with the Rule and did not specifically invoke the trial court's discretion. See *Armstrong v. State*, supra at 19 (2); *Jackson v. State*, 267 Ga. 130, 132 (7) (475 SE2d 637) (1996) (Rule 31.4). Compare *Johnson v. State*, 262 Ga. 527, 528 (1) (422 SE2d 648) (1992) (Rule 31.4). Moreover, considering that it was only after the jury was selected that Johnson ever expressed any intent to offer the evidence and that, even then, he never stated the specifics of the incident or its relevancy to a claim of self-defense, it was not an abuse of discretion to refuse to allow him to introduce the evidence. See *Barnes v. State*, supra at 353 (14); *Armstrong v. State*, supra at 19 (2). The admission of evidence despite a lack of literal compliance with the procedural requirements established by the Rules can constitute harmless error. See *Wilkins v. State*, 266 Ga. 278, 280 (3) (a) (466 SE2d 592) (1996); *Matula v. State*, 264 Ga. 673, 675 (3) (449 SE2d 850) (1994). However, we are aware of no case holding that the trial court's refusal to admit evidence notwithstanding the failure to comply with the applicable procedure is, under the circumstances which exist in this case, an erroneous abuse of discretion. See *Stephan v. State*, 205 Ga. App. 241, 244 (2) (422 SE2d 25) (1992) (abuse of discretion to admit evidence under similar circumstances). Compare *Johnson v. State*, supra at 528 (1) (Rule 31.4).

Johnson urges that he should have been allowed to introduce the topic of Harris' prior extraneous act of beating his former girlfriend on cross-examination of the State's witnesses. On cross-examination, the trial court allowed Johnson to pursue any instance of Harris' prior difficulties that was introduced by the State on direct, and only precluded Johnson from inquiring about such other instances as he had failed to give notice to the State in accordance with Uniform Superior Court Rule 31.6 (A). Thus, Johnson was not prevented from introducing evidence of Harris' prior acts of violence for impeachment purposes. *Stansell v. State*, 270 Ga. 147 (510 SE2d 292) (1998); *King v. State*, 264 Ga. 502, 503 (2) (448 SE2d 362) (1994). He was barred only from questioning the State's witnesses about Harris' prior acts of violence which had not been mentioned on direct and, thus, which were not a proper topic for impeachment. It is true that, in Georgia, the scope of cross-examination is not generally limited to what was covered on direct. *National Land &c. Co. v. Zugar*, 171 Ga. 228 (1) (155 SE 7) (1930). However, a defendant's right to cross-examine the State's witnesses on the issue of the victim's prior acts of violence is not absolute, since the relevancy and admissibility of that

inquiry to a justification claim must first be shown. *Lamon v. State*, 260 Ga. 119, 121 (4) (390 SE2d 582) (1990). See also *Laster v. State*, supra at 173 (2). Trial courts are charged with applying the Uniform Superior Court Rules "even-handed as between the State and defendants. . . ." *Watkins v. State*, supra at 662 (4). If the State fails to comply with the procedural requirements for admission of the defendant's prior transactions within the scope of Uniform Superior Court Rule 31.3 and the trial court rules the evidence inadmissible, the State may not first introduce that topic on the cross-examination of the defense witnesses. Compare *Stansell v. State*, supra at (3) (impeachment); *King v. State*, supra at 503 (2) (impeachment). Thus, an even-handed application of the Uniform Superior Court Rules mandates that Johnson's failure to comply with the applicable procedural requirements of Rule 31.6 precludes him from introducing the topic of Harris' alleged extraneous act of violence against his former girlfriend to support a justification defense, whether on direct examination of his witnesses or on cross-examination of the State's witnesses.

No reason is suggested why any evidence which was excluded as a result of the grant of the State's motion in limine would be relevant to Johnson's defense other than as support for a claim of justification. Unless connected to a claim of justification, the mere fact that Harris may have committed acts of violence in the past certainly does not constitute a defense to killing him. Indeed, evidence of such unconnected prior acts of violence would be potentially inculpatory of Johnson, since Harris would be the victim of malice murder if he was killed in revenge for those past acts, rather than in self-defense. See *Teems v. State*, 256 Ga. 675, 676 (4) (352 SE2d 779) (1987). Because the excluded evidence would be exculpatory, if at all, only with regard to a justification defense, the trial court did not err in granting the State's motion in limine based on Johnson's failure to comply with the applicable procedural requirements for admission of the evidence for that purpose. *Barnes v. State*, supra at 353 (14); *Watkins v. State*, supra at 662 (4).

4. On the cross-examination of Johnson's mother, the trial court allowed the State to inquire as to her knowledge of his history of arrests. In several enumerations, Johnson urges that the trial court erred in allowing this inquiry and in overruling motions for mistrial based upon the manner in which the State conducted the cross-examination.

The primary contention is that the cross-examination was improper because the character door was not opened during the direct examination of the witness. However, even assuming that Johnson's mother cannot be characterized as a "good character" witness, the transcript shows that he did call two others who clearly

were such witnesses. As to those two defense witnesses, the State cross-examined them, without objection, regarding their knowledge of Johnson's arrest record. *Hall v. State*, 186 Ga. App. 830, 831 (3) (368 SE2d 787) (1988). Thus, error, if any, in allowing the cross-examination of Johnson's mother on the topic of his arrest record and in overruling the motions for mistrial would be harmless, since her testimony was merely cumulative of that given by his two character witnesses. See *Jones v. State*, 265 Ga. 84, 86 (4) (453 SE2d 716) (1995).

5. Johnson further contends that the State should not have cross-examined his mother without a preliminary showing of the reliability of its information regarding his arrest record. However, he raised no such objection in the trial court. Compare *Christenson v. State*, 261 Ga. 80, 90 (8) (c) (402 SE2d 41) (1991).

6. The trial court made a preliminary ruling that the State could question Johnson's mother to the limited extent that she had knowledge of his arrest record, without "any elaboration from counsel for the State about trying to describe what it is . . . ." Thereafter, Johnson objected that, as phrased, the State's questions exceeded the permissible parameters authorized by the trial court. In response to this objection, the trial court undertook its own general questioning of Johnson's mother to determine the extent of her knowledge of the arrest record. Having satisfied itself in that regard, the trial court then allowed the State to proceed "with what limited knowledge she has about it." On appeal, Johnson urges that it was error for the trial court to pose its own questions to the witness.

It is apparent that the inquiry was for Johnson's ultimate benefit, since the trial court only sought to establish the extent to which the witness was competent to testify about Johnson's arrest record, without having the questions posed to her reveal any prejudicial factor not within her personal knowledge. Clearly, a juror is not permitted to question a witness. *State v. Williamson*, 247 Ga. 685 (279 SE2d 203) (1981). However, it is a trial court's "right, and oftentimes its duty, to question a witness in order to develop fully the truth of a case. [Cits.]" *Eagle v. State*, 264 Ga. 1, 3 (3) (440 SE2d 2) (1994). In questioning Johnson's mother, the trial court did not express its opinion as to what had been proven, and we find no abuse of discretion. *Hall v. State*, 264 Ga. 85, 86 (3) (441 SE2d 245) (1994); *Eagle v. State*, supra at 3 (3).

7. Johnson contends that his trial counsel was ineffective. Although this issue was raised in the motion for new trial filed on Johnson's behalf by new appellate counsel, a transcript of the hearing conducted on that motion was not included in the record on appeal. Therefore, we must presume that the trial court was authorized to find that Johnson failed to meet the burden of showing a

denial of his constitutional right to counsel. *Sorrells v. State*, 267 Ga. 236, 241 (9) (476 SE2d 571) (1996).

*Judgments affirmed. All the Justices concur, except Fletcher, P. J., who concurs in Divisions 1, 2, 4, 5, 6 and 7 and in the judgment.*

DECIDED NOVEMBER 23, 1998.

*Stanley C. House*, for appellant.

*Daniel J. Craig*, District Attorney, *Charles R. Sheppard*, Assistant District Attorney, *Thurbert E. Baker*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Jayson Phillips*, Assistant Attorney General, for appellee.