## S99A1774. SHIELDS v. THE STATE.
(526 SE2d 845)

HUNSTEIN, Justice.

After a jury trial, Sharon Ann Shields was found guilty of malice murder, felony murder, aggravated assault and possession of a firearm during the commission of a felony in the shooting death of her husband, Rufus Shields. She was sentenced to life imprisonment for the malice murder conviction and a five-year consecutive term of imprisonment for the firearm possession charge. Shields appeals from the denial of her motion for a new trial.[1]

1. The evidence presented at trial by the State showed that

---

[1] The crimes occurred on July 24-25, 1997. Shields was indicted on November 6, 1997 in Hall County on four counts: malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony. She was found guilty on January 28, 1999 and sentenced the same day to life imprisonment for malice murder with felony murder and assault merging, and a consecutive five years for possession of a firearm during the commission of a felony. Her motion for new trial, filed March 1, 1999, was denied June 28, 1999. A notice of appeal was filed on July 27, 1999. The appeal was docketed in this Court on September 24, 1999 and was submitted for decision on the briefs.

about 3:00 a.m. on July 25, 1997, Shields telephoned her sister and brother and asked both to come over to her house. She left instructions with her sister on where they would find the house key. Upon their arrival, the siblings located the key, a cordless phone and a note in an outside grill. They found Shields and her husband in a back room both with gunshot wounds. The note written by Shields to her brother and sister explained "I love you, I'm sorry! This son-of-b[----] had a gun under the pillow for ME! That's COLD!! . . ." Police officers dispatched to the scene found Shields's husband lying on a bed with a visible wound to the head and not breathing. Officers found a 9mm gun on the nightstand next to the bed. Shields was lying on a blanket on the floor with gunshot wounds to her upper left breast, and a .22 caliber revolver with spent casings at her feet. Investigators did not find any evidence of a struggle. Emergency personnel transported Shields to the hospital where an emergency room physician treated her for two nonthreatening gunshot wounds and a potentially life-threatening overdose of barbiturates. While being treated, Shields described to a nurse how she used two different guns to shoot her husband, explaining that she did so because her husband had threatened to divorce her. Shields did not remember shooting herself. The medical examiner testified at trial that the victim died of gunshot wounds to the head, two from a small caliber firearm at close range, and one from a larger caliber firearm from farther away. The State's firearms expert concluded that the bullets were fired by the guns recovered at the scene. This evidence is sufficient to authorize a rational trier of fact to find Shields guilty beyond a reasonable doubt of the crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Shields contends the trial court erred by allowing, over her objection, part of the prosecutor's closing argument. She asserts that the prosecutor's statement, "beyond a reasonable doubt does not mean beyond all doubt, it does not mean without a doubt and it certainly does not mean that you give the defendant the benefit of the doubt," lowered the State's burden of proof under *Sullivan v. Louisiana*, 508 U. S. 275 (113 SC 2078, 124 LE2d 182) (1993). The trial court overruled Shields's objection to the prosecutor's statement and thereafter extensively charged the jury on the State's burden of proof and the presumption of innocence. Considering the strength of the evidence and the trial court's subsequent instructions to the jury, we find it unlikely that even if the prosecutor's statement was improper it would have influenced the jury to the extent that it changed the result of the trial. See generally *Jones v. State*, 268 Ga. 12 (3) (483 SE2d 871) (1997).

3. Shields contends the trial court erred by refusing to allow the introduction of evidence of prior specific bad acts of the victim. In

order to show that evidence of specific bad acts of violence of the victim should be admitted, Shields was, at a minimum, required to (1) follow the procedural requirements for introducing the evidence, (2) establish the existence of prior violent acts by competent evidence, and (3) make a prima facie showing of justification. *Laster v. State*, 268 Ga. 172 (2) (486 SE2d 153) (1997); *Chandler v. State*, 261 Ga. 402 (3) (405 SE2d 669) (1991). See also Uniform Superior Court Rule 31.6 (B). Shields was also required to present a legitimate claim of justification; the victim was the aggressor, the victim assaulted Shields and Shields was honestly trying to defend herself. *Laster*, supra. Otherwise, as a general rule, a victim's character is not relevant or admissible in the murder trial. *Austin v. State*, 268 Ga. 602 (2) (492 SE2d 212) (1997). The overwhelming evidence presented at trial demonstrated that Shields intentionally shot her husband. There was no evidence of a struggle from which a jury could infer that Shields was trying to defend herself. Therefore, it was not error for the trial court to refuse to admit this evidence.

4. Shields further contends the trial court erred in failing to grant a mistrial because she was denied the opportunity to review an evidence log. We find no error. The record shows that the trial court afforded Shields the opportunity to determine what evidence, if any, she had not been provided, see OCGA § 17-16-6, but Shields failed thereafter to invoke a ruling as to the motion. Accordingly, Shields has waived the issue for purposes of appeal. *Dover v. State*, 250 Ga. 209 (4) (296 SE2d 710) (1982). Despite Shields's failure to preserve the claim, our review of the record shows that trial counsel was provided sufficient time at trial to review the log and to determine whether he had examined all of the evidence referred to in the log.

5. Shields contends that the trial court erred in failing to grant a mistrial because the court intimated an opinion to the jury regarding her incoherence caused by her ingesting barbiturates. During a bench conference in the midst of the emergency room physician's testimony, the prosecutor stated that she would introduce Shields's statement to a nurse at the hospital that she shot her husband because he was going to divorce her. Shields suggested that if the State introduced the statement, she would object because she was not coherent at the time she spoke to the nurse, since she had ingested barbiturates. At the conclusion of direct examination, the trial court questioned the physician about the effects of the "reversal" medication he had administered to Shields and about when she became coherent. The trial court's examination of a witness called by either side is not cause for a new trial unless the court, during its examination of the witness, expresses or intimates an opinion on the facts of the case or as to what has or has not been proved, or the questioning becomes argumentative. *Mullins v. State*, 269 Ga. 157, 159 (3)

(496 SE2d 252) (1998); *Eubanks v. State*, 240 Ga. 544 (2) (242 SE2d 41) (1978); OCGA § 17-8-57. Our review of the record reveals that on direct examination the witness testified that Shields was treated for a drug overdose and that she had a life-threatening level of barbiturates in her system. The question by the trial court to the witness regarding the effects of the reversal medication and Shields's resulting level of coherence was not an expression of an opinion but a means to determine whether admission of the nurse's statement would be permitted.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 31, 2000.

*Fox, Chandler, Homans, Hicks & McKinnon, Joseph A. Homans,* for appellant.

*Lydia J. Sartain, District Attorney, Margaret Schnee-Gregory, Deputy District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Daniel G. Ashburn, Assistant Attorney General,* for appellee.