## A01A0409. LEWIS v. THE STATE.
(549 SE2d 732)

SMITH, Presiding Judge.

Sean Lewis, Teddy Bradshaw, and Jaylon Taylor were indicted on various charges arising out of an attempt to rob a group of golfers at a DeKalb County course. Lewis was charged with two counts of aggravated assault with a deadly weapon and two counts of aggravated assault with intent to rob, and he was tried separately from his co-defendants.[1] The jury was unable to reach a verdict on the two counts of aggravated assault with a deadly weapon, but convicted Lewis on both counts of aggravated assault with intent to rob. Lewis's amended motion for new trial was denied, and he appeals. Finding no error, we affirm.

1. In two enumerations, Lewis raises the general grounds. Construed in favor of the jury verdict, the evidence shows that Lewis and his co-defendants planned the robbery at school.[2] Bradshaw had already committed several armed robberies at a particular location on the golf course. Lewis and Taylor obtained two firearms and an air pistol from Bradshaw's home, and all three went to the same place on the golf course and hid behind a tree. After several groups of golfers had passed, a group approached driving three golf carts. Bradshaw directed Lewis to approach a water cooler and wait for the lead golfer there while he and Taylor accosted the remaining golfers. Lewis obeyed and waited beside the water cooler until the first golfer approached.

Bradshaw and Taylor stopped the second cart and forced the

---

[1] Lewis was a juvenile at the time of the incident but was tried as an adult.
[2] Both Bradshaw and Taylor testified for the State; they did not plead guilty until after Lewis's trial.

occupants to the ground; Bradshaw then fired several shots while Taylor held the air pistol to one golfer's head. The golfer in the first cart testified that he saw Bradshaw and Taylor stand up and display their firearms; he "mashed the gas" and fled from Bradshaw and Taylor, but was intercepted by "a guy that came from behind the water cooler" and pointed a gun at him while "walking fast at me." He dove from his cart as gunfire erupted; he believed that the shots were aimed at him.[3]

The golfer in the third cart, an assistant pro at the course, had witnessed another Bradshaw robbery a few days before and had armed himself. When he observed the robbery in progress, he returned fire, striking Taylor in the head. Taylor was arrested at the scene and identified Lewis as a participant; Lewis and Bradshaw were arrested shortly afterward.

Lewis asserts that the State failed to prove his participation in the attempted robberies, claiming that he abandoned or withdrew from them. In his statement to police and his testimony at trial, he contended he told the others, "I can't do this" or "I am not with it," abandoned the enterprise, and walked away to the water cooler to get a drink. But both Bradshaw and Taylor denied that Lewis ever told them he was "out of this" or going home, and both testified that Lewis took Bradshaw's gun with him when he went to the water cooler, although Lewis testified that he took the gun because he did not want Taylor to shoot anyone. The decision as to whether Lewis participated in the robbery or abandoned the enterprise was for the jury to determine:

> An appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence to convict is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Conflicting testimony is a matter of credibility for the jury to resolve. As long as some competent evidence exists, even though contradicted, to support each fact necessary to make out the State's case, we will uphold the jury's verdict.

(Citations and punctuation omitted.) *Wheeler v. State*, 236 Ga. App. 197, 198 (1) (511 SE2d 564) (1999). Given the testimony of the victims as well as that of the co-defendants, the jury was authorized to convict Lewis under the standard of *Jackson v. Virginia*, supra.

2. Lewis also contends that the trial court erred in allowing the

---

[3] While the first golfer was unable to identify his assailant at trial, both Lewis's own testimony and the testimony of his co-defendants placed Lewis at the water cooler at the time of the incident.

statement of one of the golfers to be read into evidence because he was out of town at the time of the trial. The trial court heard pretrial testimony from the police officer who took the statement and found the statement admissible. In its order denying Lewis's motion for new trial, the trial court elaborated on its pretrial ruling, finding that the victim gave his statement to the police approximately 45 minutes after the crime occurred, that he was still excited and upset from having been a victim of an aggravated assault, and that he had not discussed what he would tell the police with any of the other victims. On this basis, the trial court concluded that the victim's statement was "free from afterthought and device" and ruled it admissible pursuant to *Stovall v. State*, 216 Ga. App. 138-139 (1) (453 SE2d 110) (1995), and *Taylor v. State*, 226 Ga. App. 339-340 (1) (486 SE2d 601) (1997).

We find no error in the trial court's ruling. "A trial court's determination that evidence is admissible as part of the res gestae will not be disturbed unless it is clearly erroneous." (Citations and punctuation omitted.) *Stovall*, supra at 139 (1). In *Stovall*, a police officer was permitted to read a statement taken from a victim approximately 45 minutes after the crime was committed; we concluded that "[t]he evidence was relevant and the statement was made without premeditation." Id. Here, the officer who took the statement testified that his transcript of the victim's account was written down at 2:37 p.m., between ten and fifteen minutes after beginning the interview. Testimony was offered that the crime occurred at about 1:40 p.m. According to the officer, the victim was "visibly shaken, he was real nervous . . . he chain smoked while I was talking to him, he was so upset about the incident." Another victim testified that he had no opportunity to talk with the other victims because "they all ran for help in different directions" and returned only as the police arrived. The trial court's determination was supported by some evidence and was not clearly erroneous; we will not disturb it.

3. Lewis argues that a portion of the prosecutor's closing argument was error, but he has waived that ground by not raising an objection at trial. *Miller v. State*, 267 Ga. 92 (2) (475 SE2d 610) (1996).

4. Lewis also asserts as error the trial court's refusal to allow a juror to testify at the hearing on his motion for new trial regarding a juror's alleged misunderstanding of the law and a juror's alleged assertion during deliberations that Lewis would get probation if convicted. But OCGA § 17-9-41 provides: "The affidavits of jurors may be taken to sustain but not to impeach their verdict." Limited exceptions have been created "where extrajudicial and prejudicial information has been brought to the jury's attention improperly, or where non-jurors have interfered with the jury's deliberations. [Cits.]" *Gardiner*

*v. State*, 264 Ga. 329, 332 (2) (444 SE2d 300) (1994). But these exceptions do not include jurors' provision of legal information to other jurors or jurors' misapprehension or confusion regarding the law. Id. "OCGA § 17-9-41 effectively precludes jurors from engaging in post-trial attacks on their verdict on the basis of statements uttered to one another inside the jury room." (Footnote omitted.) *McCorkle v. State*, 245 Ga. App. 505, 507 (2) (538 SE2d 161) (2000); see also *Moore v. State*, 224 Ga. App. 797, 801 (6) (481 SE2d 892) (1997). Since the proposed affidavit does not fall within any exception to OCGA § 17-9-41, the trial court did not err in refusing to consider it.

5. Lewis also alleges ineffective assistance of counsel in several respects. To prevail on a claim of ineffective assistance of counsel, it must be shown both that counsel's performance was deficient and that but for this deficiency, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Failure to satisfy either prong of the *Strickland* standard is fatal to an ineffective assistance claim. *Brewer v. State*, 224 Ga. App. 656, 657-658 (2) (481 SE2d 608) (1997). In addition, a strong presumption exists that trial counsel performed within the wide range of reasonable professional assistance. *Davis v. State*, 238 Ga. App. 84, 89 (7) (517 SE2d 808) (1999). The trial court's determination that Lewis was afforded effective assistance of counsel will not be reversed on appeal unless it was clearly erroneous. *McCant v. State*, 234 Ga. App. 433, 436 (3) (506 SE2d 917) (1998). Lewis has failed to meet this standard.

(a) Lewis contends that his trial counsel was ineffective in failing to subpoena one of the victims, who was out of town at the time of trial. But trial counsel testified that he believed the prosecutor wanted the witness but did not want to delay the trial. Trial counsel objected to the victim's statement on hearsay grounds but also thought that the jury would not give as much credit to a written statement as to live testimony, even if it were admitted. He also considered that the jury might believe the victim did not particularly care about the case if he could not be bothered to come to trial. He did not believe he had any significant grounds for cross-examination and thought that the victim appearing in person would probably hurt the defense more than "trying to twist his story a little bit" on cross-examination would benefit Lewis. "[S]uch matters as the examination of witnesses are grounded in matters of trial tactics and strategy and do not provide a basis for finding counsel lacking. Such tactical decisions do not equate with ineffective assistance of counsel." (Citations and punctuation omitted.) *Turner v. State*, 245 Ga. App. 294, 296 (4) (c) (536 SE2d 814) (2000).

(b) In a brief argument consisting of three conclusory sentences, Lewis contends his trial counsel was ineffective because he did not

make numerous objections at trial. He first complains that trial counsel did not object to the trial court's charge on reasonable doubt. But there was no error in this charge, which substantially followed the pattern jury instructions. *Brown v. State*, 264 Ga. 48, 49-50 (3) (a) (441 SE2d 235) (1994).

Next, Lewis contends his trial counsel was ineffective in not objecting to a portion of the prosecutor's remarks during closing argument, contending he misstated the law. See Division 3, above. Trial counsel acknowledged that "just in hindsight" the prosecutor's closing argument could have confused the jury on the issue of parties to the crime and abandonment. But although he did not object at the time, he responded to and vigorously attacked the State's contentions in Lewis's closing argument. Lewis has not shown that an objection instead of or in addition to his counsel's direct attacks on the State's argument in closing would have resulted in a different outcome at trial. Moreover, the trial court instructed the jury on the legal principles of intent, abandonment, and mere presence at the scene of a crime. " '[Q]ualified jurors under oath are presumed to follow the instructions of the trial court.' [Cit.]" *Gomillion v. State*, 236 Ga. App. 14, 19 (3) (d) (512 SE2d 640) (1999).

Lewis asserts his trial counsel was ineffective in failing to object to the trial court's response to a question from the jury during deliberations. But the jury directed at least nine questions to the trial court, and Lewis does not specify which of many responses he deems objectionable, nor does he make any argument supporting his conclusory statement that one, unspecified response was erroneous. This court will not "change its role from disinterested decision-maker to appellate advocate reviewing a trial record for error," *Rowland v. State*, 264 Ga. 872, 874 (1) (452 SE2d 756) (1995), to determine, first, whether any one of the trial court's many responses was improper and, then, whether trial counsel's failure to object thereto rose to the level of ineffective assistance. Court of Appeals Rule 27 (c) (2).

(c) Lewis also contends that his trial counsel was ineffective in failing to impeach two witnesses with respect to alleged inconsistencies in their testimony. In one instance, the inconsistency alleged by Lewis is not reflected by the record, and trial counsel therefore was not ineffective in failing to impeach for a nonexistent inconsistency. Lewis also complains that his counsel was ineffective in failing to impeach one victim with regard to an omission in his statement to police. But as the trial court noted on at least two occasions during Lewis's sentencing and again during the motion for new trial, this victim was a very effective witness. Trial counsel testified that the witness "was a very sympathetic guy," that he would be unable to "turn [him] into somebody who appeared to be a liar," and that "there wasn't really a lot of impeachment" available to him. He therefore

made a tactical decision to challenge the victim on other problems with his testimony instead of the omission from his statement to the police. This is the essence of a tactical decision and does not amount to ineffective assistance of counsel.

(d) Lewis complains that trial counsel was ineffective in failing to request jury instructions on the lesser included offenses of criminal attempt or reckless conduct. But trial counsel testified that the presentation of lesser included offenses conflicted with Lewis's defense of abandonment and that Lewis and his family did not want those offenses raised. And, as noted above, the trial court charged the jury on intent, abandonment, and mere presence at the scene of a crime.

(e) Finally, Lewis complains that his trial counsel was ineffective in failing to request an "appropriate" charge on withdrawal, renunciation, and abandonment, although the trial court did in fact charge on these issues. But Lewis did not raise this issue at the hearing on his motion for new trial, and it will not be considered for the first time on appeal. *Guertin v. State*, 243 Ga. App. 322, 324, n. 2 (533 SE2d 159) (2000).

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED MAY 21, 2001 —
RECONSIDERATION DENIED JUNE 4, 2001 ▮▮▮▮▮▮▮

*Dwight L. Thomas, Caprice J. Small,* for appellant.
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Gregory K. Schwarz, Assistant District Attorneys,* for appellee.