## A02A0645. WILLIAMS v. THE STATE.

(564 SE2d 759)

ELLINGTON, Judge.

Gerald Williams appeals from the denial of his motion for new trial following his conviction for aggravated assault, OCGA § 16-5-21 (a); family violence battery, OCGA § 16-5-23.1 (f); and simple battery, OCGA § 16-5-23 (a). The charges arose out of a domestic dispute in which he assaulted his wife and shoved his brother-in-law. He appeals, contending he was denied discoverable material by the State and alleging the trial court erred in refusing to admit certain evidence. Finding no error, we affirm.

1. Williams argues that he was entitled to the Georgia Crime Information Center's criminal histories ("GCIC reports") of prospective jurors under the discovery statute, OCGA § 17-16-4. Immediately before trial, Williams asked the trial court either to require the State to turn over copies of the GCIC reports to him or to prevent the State from using the reports during jury selection. On appeal, Williams contends the trial court erred when it refused his request. There is no merit to this argument.

(a) Local law enforcement agencies, including county prosecutors, are allowed to obtain the GCIC reports of potential jurors and to use them to determine whether any are convicted felons. See OCGA §§ 35-3-30 (3), (6); 35-3-33 (a) (10) (Georgia Bureau of Investigation's policies and procedures regarding prosecutors' use of GCIC reports for official law enforcement duties only); *Sears v. State*, 262 Ga. 805, 808 (6) (426 SE2d 553) (1993) (finding no reason to prohibit the State from running criminal background checks on prospective jurors). Defense attorneys are not considered law enforcement agencies under OCGA § 35-3-30 (6) and, therefore, as private individuals, are not authorized to receive the GCIC reports on potential jurors without the express written consent or the fingerprints of the jurors. See OCGA § 35-3-34 (a) (1) (A). Further, the prosecution is prohibited from releasing the GCIC reports to defense counsel absent the jurors' written consent or fingerprints. OCGA § 35-3-34 (d). As such, there is no provision which allows defense attorneys access to the GCIC

reports, absent the jurors' consent. Therefore, we find that the State was authorized to check the criminal history records of prospective jurors for use in determining the eligibility of the jurors and that the State was not authorized to provide those records to defense counsel. The trial court did not err in denying Williams' motion to require the State to turn over the GCIC reports to the defense or to prohibit the State from using the reports during voir dire.

(b) Even if the State could have provided the GCIC reports to Williams prior to trial, however, the State is required to provide the defendant this type of information under the criminal discovery statute, OCGA § 17-16-4 (a) (3), *only* if it is "intended for use by the prosecuting attorney as evidence in the prosecution's case-in-chief or rebuttal at the trial." In this case, the record shows that the State did not use or even intend to use the GCIC reports in its case-in-chief or in rebuttal. Instead, the GCIC reports were used to determine if the prospective jurors were convicted felons, which would disqualify them from serving on a jury. There was no evidence that the GCIC reports were misused in this case. See *Kinney v. State*, 223 Ga. App. 418, 422 (3) (477 SE2d 843) (1996) (this issue was waived when defense presented no evidence that the GCIC reports of prospective jurors were misused during voir dire). Therefore, the records were not discoverable documents under OCGA § 17-16-4 (a) (3). See also *King v. State*, 273 Ga. 258, 263 (12) (c) (539 SE2d 783) (2000) (the State is not required to disclose information about prospective jurors unless it is exculpatory and, therefore, subject to *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963)); *Wansley v. State*, 256 Ga. 624, 626 (2) (352 SE2d 368) (1987) (information about jurors' previous service on a jury may be valuable to the defense, but it need not be produced because it is not exculpatory). There was no error.

2. Williams complains that the trial court erred in refusing his request to present the testimony of a witness as to prior acts of violence by the victim.

> The victim's previous difficulties are rarely relevant for any purpose in a criminal proceeding. This is because a crime is no less punishable if committed against a bad person than if it were perpetrated against a good person. An exception does exist when the defendant claims justification for his actions and offers evidence that the victim was the aggressor.

(Citations omitted.) *Johnson v. State*, 270 Ga. 234, 235 (3) (507 SE2d 737) (1998). In order to present evidence of prior violent acts by the victim, Williams "was, at a minimum, required to (1) follow the procedural requirements for introducing the evidence, (2) establish the existence of prior violent acts by competent evidence, and (3) make a

prima facie showing of justification." (Citations omitted.) *Shields v. State*, 272 Ga. 32, 34 (3) (526 SE2d 845) (2000). The procedural requirements of Uniform Superior Court Rules 31.1 and 31.6 require a defendant to provide the State with written notice at least ten days before trial which states the specific violent act; the date of the act; the name, address, and telephone number of the person involved; and other relevant information. "The purpose of the time requirement of USCR 31.1 is fundamental fairness. The rule recognizes the difficulty of rebutting evidence of specific acts unless timely notice of the defendant's intention to offer evidence is given." (Citation and punctuation omitted.) *Armstrong v. State*, 265 Ga. 18, 19 (2) (453 SE2d 442) (1995). The trial court has the discretion to shorten the ten-day period. Id. Further, "[t]he purpose of Rule 31.6 (A) is to provide the State with reasonable notice that [Williams] intended to rely upon that occurrence to support a justification defense." (Citation omitted.) *Johnson v. State*, 270 Ga. at 236 (3).

Immediately before trial in this case, Williams contended he did not learn about the witness, Dale Oliver, until January 29, 2001, and that he notified the State as soon as he received the witness' correct address and phone number. However, Williams did not include Oliver's name in its amended responses to discovery, filed on January 29 and January 31, 2001. He subpoenaed Oliver on February 1, 2001. Williams instead filed his notice of intent to present evidence of the victim's violent acts against a third party at 4:30 p.m. on Friday, February 2, 2001, just before the scheduled trial on Monday, February 5. This notice did not allege that the victim was violent toward Oliver, but instead alleged only that she falsely accused Oliver of striking her.[1]

The State argued that it was prejudiced by the untimely notice, because it was unable to investigate the allegedly false accusation of the victim. The State also argued that the time of filing, i.e., 30 minutes before the courthouse closed for the weekend on the Friday before trial, evidenced Williams' bad faith. After noting that the case had been on several previous trial calendars, the trial court stated that it found it "incredible that right here, right before trial, . . . [the Rule 31.1 notice to present this evidence of violent acts] sudden[ly] appears." The trial court chose not to shorten the ten-day time requirement of USCR 31.1. As a result, the trial court found that Williams failed to timely file the notice and denied his request to present Oliver's testimony of prior bad acts by the victim. Under the circum-

---

[1] The record shows that the trial court never prohibited Williams from cross-examining the victim as to her allegedly false accusations against Oliver.

stances presented here, we find no abuse of discretion. *Armstrong v. State*, 265 Ga. at 19 (2).

3. Williams contends as many as three jury members committed perjury by responding that their verdict was guilty when the trial court polled the jury after the verdict was published. According to the affidavit of appellate counsel, the jurors allegedly failed to recognize the difference between the charges of aggravated assault and battery. As a result, they rendered a guilty verdict on the aggravated assault charge, even though they did not believe Williams used a weapon during the attack. Then, according to counsel, when the trial court polled the jurors following the verdict, the jurors committed "perjury" by affirming their verdict.

This issue was raised in Williams' amended motion for new trial, but, at the motion hearing, Williams asked for a two-week continuance on this issue.[2] The trial court granted the request and, in its April 30, 2001 order, reserved a ruling on the sole issue of jury perjury.

At the second hearing six weeks later, on June 13, 2001, none of the jurors appeared to testify. Further, Williams did not submit affidavits from the jurors. See OCGA § 17-9-41. Instead, Williams called his trial counsel to testify regarding what certain jurors allegedly told her about their "perjury" immediately after Williams was sentenced.

> OCGA § 17-9-41 provides: "The affidavits of jurors may be taken to sustain but not to impeach their verdict." Limited exceptions have been created where extrajudicial and prejudicial information has been brought to the jury's attention improperly, or where non-jurors have interfered with the jury's deliberations. But these exceptions do not include jurors' provision of legal information to other jurors or jurors' misapprehension or confusion regarding the law.

(Citations and punctuation omitted.) *Lewis v. State*, 249 Ga. App. 812, 814-815 (4) (549 SE2d 732) (2001). It follows that if a juror's affidavit cannot impeach a verdict, the affidavit of a third party repeating alleged post-trial hearsay statements by jurors cannot impeach the verdict. *Rylee v. State*, 28 Ga. App. 230, 231 (3) (110 SE 749) (1922). Further, because a defendant may not impeach a jury's ver-

---

[2] The State objected to the continuance on the basis that several weeks had passed since trial and Williams had failed to subpoena the jurors. Williams responded that he did not subpoena the jurors because it was "not right to subpoena people on a fishing expedition," just because they "may know something." Appellate counsel admitted that she did not even know if the three jurors who allegedly committed perjury would, in fact, admit to the allegations.

dict by showing the jury did not understand the law or that it misapplied the law to the facts, the trial court did not err in excluding evidence of the "perjury" and denying the motion for new trial on this basis.

4. Williams contends the trial court abused its discretion in refusing to hear evidence on whether alleged juror misconduct violated his constitutional rights. The record shows that, after the trial court ruled on two of the three issues in Williams' motion for new trial, Williams moved to amend the motion for new trial to add an affidavit and to further amend the motion "as necessary." On June 12, 2001, before the trial court ruled on this motion to amend, and the day before the hearing on the sole remaining issue of juror perjury, Williams filed an amended motion for new trial alleging juror misconduct during deliberations.[3] At the motion hearing the next day, the trial court reminded counsel that it had reserved only the juror perjury issue for consideration. See Division 3, supra. The trial court then denied Williams' motion to further amend; ruled that the June 12, 2001 amendment alleging juror misconduct was, therefore, not timely raised; and dismissed the proposed amendment. Having reviewed the record, we find the trial court did not abuse its discretion in dismissing the proposed amendment as untimely. See OCGA § 5-5-40 (b) (motion for new trial "may be amended any time on or before the ruling thereon"); see also *Armstrong v. State*, 265 Ga. at 19 (2).

*Judgment affirmed. Smith, P. J., and Eldridge, J., concur.*

DECIDED APRIL 11, 2002 —
RECONSIDERATION DENIED APRIL 29, 2002.

*Axam, Adams & Secret, Tony L. Axam*, for appellant.
*Robert E. Keller, District Attorney, Lalaine A. Briones, Assistant District Attorney*, for appellee.

---

[3] Williams alleged that, during deliberations, one juror stated that Williams did not have to use a weapon to be convicted of aggravated assault. We note that, even if this allegation were proven by Williams, it would not impeach the verdict. *Lewis v. State*, 249 Ga. App. at 814-815 (4).