## A02A1557. DAVENPORT v. THE STATE.
### (565 SE2d 900)

ELDRIDGE, Judge.

A Clarke County jury found Frederick Davenport and his two co-defendants, Morris Dunn and Edward Scott, Jr., guilty of aggravated assault and aggravated battery, which charges arose when, during the course of the three defendants' attempt to murder a third unrelated party in a drive-by shooting, an innocent bystander was shot and paralyzed. Davenport appeals, challenging the sufficiency of the evidence and claiming error in the trial court's failure to charge the jury on self-defense. As we find that the evidence was sufficient to support Davenport's conviction and that the facts of record do not support a justification charge, we affirm.

1. Davenport claims the trial court erred in denying his motion for directed verdict made at the close of the State's case, contending that the State's evidence was too "conflicting and contradictory" for a rational trier of fact to find beyond a reasonable doubt that he participated in the charged offenses.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. A motion for a directed verdict in a criminal case should only be granted when there is *no conflict* in the evidence and the evidence demands a verdict of acquittal as a matter of law. Moreover, on appeal the evidence must be viewed in the light most favorable to the verdict, [Davenport] no longer enjoys the presumption of innocence, and the appellate court determines the sufficiency, not the weight of the evidence, and does not judge the credibility of the witnesses. Further, we do not speculate which evidence the jury chose to believe or disbelieve.[1]

Here, evidence of record shows that Davenport and his co-defendants drove up to the curb of a public housing project at Pauldoe Street and Old West Broad in Athens; they were in a gray Caprice with a vinyl top. Co-defendant Scott was driving; appellant Davenport was in the backseat; and co-defendant Dunn was in the front passenger seat. When the car came to a stop, Dunn attempted to exit the Caprice. The victim testified that "[t]he guy in the front seat, he fumbles with the door and the guy in the backseat helped him get his door open." As Dunn exited the car, he fired a weapon at

---

[1] (Citations and punctuation omitted; emphasis supplied.) *Coalson v. State*, 237 Ga. App. 570 (515 SE2d 882) (1999).

Antonio Thomas, who was standing nearby.[2] The victim, a bystander, was hit in the throat with the first shot, severing his spinal cord and paralyzing him. Dunn ran past the victim and fired several more shots at Thomas. Thereafter, Dunn ran back to the car, got in, and began firing out the window as the car drove away. Eyewitness testimony showed that Davenport also began shooting out the rear passenger side window as the car drove down Pauldoe Street.

The police immediately dispatched an APB for the Caprice as involved in a drive-by shooting. Almost at once, Officer A. Epps with the Athens-Clarke County Police Department saw the vehicle, chased it, and was able to block the Caprice between Franklin Street and Milledge Avenue. Epps testified that "[t]wo occupants were bailing out of the passenger side of the vehicle. I exited my patrol vehicle and drew my duty weapon and ordered them to the ground." Dunn and appellant Davenport were "put on the ground" and handcuffed. Scott, still in the car, was also arrested. The car was searched, and several shell casings were found therein. Additional shell casings were recovered from the scene. No weapons were found on the defendants or in the Caprice. But, upon retracing the likely route taken by the Caprice after leaving the incident location, an automatic handgun was found in the yard of a residence on Hancock Avenue; there were divots in the concrete sidewalk beside the yard and the gun was scraped, which evidence was consistent with the weapon being tossed from a vehicle and bouncing off the sidewalk into the yard. Analysis at the Georgia Bureau of Investigation Crime Lab showed that the shell casings recovered at the scene and in the Caprice had been fired from the handgun found on Hancock Avenue.

When construed to uphold the verdict, we find this evidence sufficient for a rational trier of fact to have found Davenport guilty as a party to the charged offenses.[3] Presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred.[4] The evidence shows that appellant Davenport aided Dunn by opening the door of the vehicle for him; Davenport fired a weapon at the intended victim as the Caprice was driving away; and he attempted to flee after being stopped by the police. That there may have been conflicts in the testimony of the State's witnesses is not a matter for this Court. Instead, as they were authorized to do, the jury resolved all conflicts when choosing which testimony to believe and which to reject.[5]

---

[2] Apparently, Thomas and co-defendant Dunn had previously had an altercation.

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See OCGA § 16-2-20 (a).

[4] *Grace v. State*, 210 Ga. App. 718, 719 (1) (437 SE2d 485) (1993).

[5] *Millwood v. State*, 237 Ga. App. 748 (1) (516 SE2d 799) (1999).

Moreover, contrary to Davenport's contentions, the fact that only one weapon was recovered and that all the recovered shell casings came from such weapon does not as a matter of law negate eyewitness testimony that Davenport was also firing a handgun from the rear passenger window, especially since co-defendant Scott took the stand on his own behalf — not on behalf of the State — and testified that Davenport had a weapon; that he was firing it from the car; and that he tossed it out of the car window. After all, not all handguns are automatics which eject shell casings. And, indeed, the fact that only one weapon was recovered after being thrown from the Caprice does not refute the fact that another weapon may have been thrown and simply not found. These are issues for a jury to determine. The jury did so in this case. As the State's evidence was sufficient to prove the essential elements of the offenses as charged against Davenport, there was no error in denying his motion for directed verdict.[6]

2. Davenport enumerates as error the trial court's failure to charge on self-defense. He did not make a request for the instruction, but urges it was unnecessary to do so because justification was his sole defense. We reject this contention. The record shows that Davenport's defense was "mere presence." Davenport claimed that the State proved only that he was there and that there was no evidence he either possessed a weapon or had a motive to use a weapon: "[Davenport's Defense Counsel:] I told you he [Davenport] was in the wrong place at the wrong time. I told you that the evidence would be that there wasn't a gun. I told you that the evidence would be that there wasn't a motive." Thus, justification was not his sole defense, and the trial court charged the jury on "mere presence." Moreover, Davenport "did not produce any evidence which would support a finding that shooting the unarmed victim in the [neck] was an act of self-defense."[7]

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED MAY 30, 2002.

*Vicki E. Carter*, for appellant.
*Kenneth W. Mauldin, District Attorney, Phillip C. Griffeth, Assistant District Attorney*, for appellee.

---

[6] *Noble v. State*, 225 Ga. App. 470 (484 SE2d 78) (1997).
[7] *Riley v. State*, 274 Ga. 342, 343 (2) (553 SE2d 797) (2001).