## A03A0265. FALAK v. THE STATE.

(583 SE2d 146)

JOHNSON, Presiding Judge.

A jury found Abdullah Falak guilty of three counts of child molestation, and one count each of aggravated sexual battery, incest, and statutory rape in connection with offenses committed against his stepdaughter. Falak was found not guilty of aggravated child molestation. He appeals from the judgments of conviction entered upon the verdicts, contending that the evidence was not sufficient to support the verdicts, the trial court erred in denying his motion for a mistrial after the victim impugned his character, he was denied a fair trial because the English-Arabic interpreter provided at trial was not an effective translator, and he received ineffective assistance of trial counsel. The enumerations are without merit, so we affirm the convictions.

1. Falak contends that the evidence was insufficient to support the verdict. He insists that the child's testimony was inconsistent and uncorroborated, and that it should not have been believed. The evidence was sufficient.

On appeal, the evidence must be viewed in the light most favorable to the verdict.[1] An appellant no longer enjoys the presumption of innocence, and the appellate court determines only the sufficiency of the evidence.[2] This court does not judge the credibility of the witnesses.[3]

At trial, the 14-year-old child testified that Falak was her stepfather, and that he had sexual intercourse with her, placed his finger in her vagina, placed his hand on her vagina, placed his mouth on her breast, and placed his mouth on her mouth. This testimony established the offenses of aggravated sexual battery, incest, and the

---

[1] *Davenport v. State*, 255 Ga. App. 593 (1) (565 SE2d 900) (2002).

[2] Id.

[3] Id.

three charged counts of child molestation.[4] As to these offenses, it was not necessary for the child's testimony to be corroborated.[5] The fact that the child's accounts of the offenses were not always consistent is not fatal, either. It was for the jury to assess her credibility, resolve any conflicts in the evidence, and arrive at a determination of the facts.[6] The jury was entitled to believe part of the witness' testimony and discount or disregard the rest of the witness' testimony.[7] The evidence was sufficient as to these charges.[8]

As Falak points out, a conviction for statutory rape cannot rest solely on the testimony of the victim.[9] In this case, it does not. The 14-year-old victim's testimony that her stepfather had sexual intercourse with her was corroborated by the nurse practitioner's testimony that the child's hymen was torn and that the tear was consistent with the vagina having suffered forceful penetration. The child's accusation was also corroborated by her outcry to a refugee mental health counselor that Falak had been sexually abusing her since she was seven years old.[10] Slight circumstances may be sufficient corroboration.[11] The evidence was sufficient to persuade a rational trier of fact, beyond a reasonable doubt, that Falak was guilty of statutory rape.[12]

2. Falak contends the trial court abused its discretion in denying his motion for a mistrial after the child described him as "a bad man[,] . . . a drinker[, and] a woman eater [sic]." He urges that the court's curative instruction was not adequate to alleviate the resulting harm. The trial court did not abuse its discretion in denying the motion for a mistrial.

Prior to trial, the state agreed not to introduce evidence that Falak abused his wife. On cross-examination, defense counsel asked the victim if there were times she got into trouble when the family lived in Lebanon. She replied, "Yeah." Defense counsel then asked the victim if there were times when she went out at night and no one

---

[4] OCGA §§ 16-6-4; 16-6-22; 16-6-22.2.

[5] *Ferrell v. State*, 256 Ga. App. 692, 694 (1) (569 SE2d 899) (2002) (no corroboration necessary for child molestation); *Sewell v. State*, 244 Ga. App. 449, 451 (1) (c) (536 SE2d 173) (2000) (testimony of a single witness generally sufficient to establish a fact; no corroboration required in aggravated child molestation case); *Scales v. State*, 171 Ga. App. 924 (2) (321 SE2d 764) (1984) (no corroboration needed in incest case); OCGA § 16-6-22.2 (statute does not require corroboration).

[6] *Jones v. State*, 272 Ga. 154, 155 (1) (527 SE2d 543) (2000); *Knight v. State*, 239 Ga. App. 710, 712 (1) (521 SE2d 851) (1999).

[7] *Shue v. State*, 251 Ga. App. 50, 51 (1) (553 SE2d 348) (2001).

[8] See *Kelley v. State*, 233 Ga. App. 244, 247 (2) (503 SE2d 881) (1998); *Raymond v. State*, 232 Ga. App. 228, 229 (1) (501 SE2d 568) (1998).

[9] OCGA § 16-6-3 (a).

[10] See *Reece v. State*, 241 Ga. App. 809, 810 (527 SE2d 642) (2000).

[11] Id.

[12] See *Hixon v. State*, 251 Ga. App. 27, 29 (1) (553 SE2d 333) (2001).

knew where she was. She replied that the only time she went out at night without anyone knowing where she was occurred when Falak was hitting her mother on the head with a big piece of wood and her mother was screaming and crying. The victim said, "I went outside and said, that's enough, I'm tired of it, I'm sick of it, and I ran for like ten minutes and nobody knew where I was." There was no objection.

On redirect, the prosecutor asked the victim how she feels about her mother. She testified that:

> I feel sad for her because she [has] to live by herself. . . . And I'm mad at her, too, because she's supposed to stay on my side because I [am] her daughter and she believe[d] what he did to me. . . . Why she got to go and stand by his side because — and she know that he's a bad man. He's a drinker man. He's a — he's a woman eater and stuff.

Defense counsel moved for a mistrial, complaining that the victim commented on Falak's character, despite the prosecutor's promise not to introduce evidence regarding acts of violence Falak may have committed upon the mother. The prosecutor remarked that she did not intend to elicit the response, and explained that the child's response might be attributable to "some communication and language issues here," since the child had only been speaking English for a year. The court denied the motion for a mistrial and offered to give curative instructions. The court then proposed to give a particular curative instruction. Defense counsel responded that the suggested curative instruction "would be fine," though she expressed some skepticism as to whether an instruction would suffice. The prosecutor then spoke to the witness off the record. The trial court instructed the jury to disregard the witness' statement alleging that Falak committed an act of physical violence in the past, that the testimony at issue is not relevant to the case, and that Falak is only on trial for the acts set forth in the indictment. Defense counsel renewed her motion for a mistrial.

We point out that the child's testimony about Falak was not responsive to the state's question regarding her feelings toward her mother. An unresponsive answer that impacts negatively on a defendant's character does not improperly place the defendant's character in issue.[13]

Interestingly, defense counsel's objection came on redirect. Assuming the testimony can be construed as mentioning Falak's acts of violence toward the mother, it is not as negative as the victim's earlier testimony on *cross-examination* that Falak struck the mother

---

[13] *Adams v. State*, 274 Ga. 854, 855 (2) (561 SE2d 101) (2002).

in the head with a big piece of wood. There was no objection to that testimony. The testimony about which Falak now complains was merely cumulative, and therefore harmless.[14] The trial court did not abuse its discretion in denying the motion for a mistrial.[15]

3. Falak, who is from Sudan and speaks Arabic, contends he was deprived of the ability to provide any meaningful assistance to his trial counsel because he did not understand the translations from English to Arabic. At the beginning of the trial, the court asked defense counsel if Falak understands English. Counsel replied, "Some. He attempts to, yes." The interpreter was then sworn to translate from English to Arabic, and from Arabic to English. Falak claims that the interpreter had to be admonished to translate verbatim, and that Falak's Sudanese dialect is different from that of his interpreter, who is from Syria.

At one of the hearings on the motion for a new trial Falak testified, through a new interpreter, that while he understood some of what the trial translator said, he did not understand everything. Falak stated that there was a problem with dialects, and that he asked the translator to slow down, but he did not. Trial counsel stated at the hearing on the motion for a new trial that she had concerns throughout the trial that Falak "was just not getting it" and did not seem to understand what was happening.

In another post-trial hearing, the trial interpreter testified that he speaks Arabic and English, among other languages, that he has been certified as a translator by the Federal Bureau of Investigation, that he has translated extensively for the United States Department of Customs, that he has translated in court cases and depositions, and that he has served as a translator for Sudanese immigrants for the Department of Family and Children Services. The interpreter agreed that there are numerous Arabic dialects, but that literary Arabic is the same throughout the world. He added that when Arabic-speaking people have difficulty speaking to persons of different dialects, they will use literary Arabic to clarify their speech. Despite the fact that the two men had different dialects, the interpreter testified that he understood Falak, and that Falak did not express any difficulty understanding the translations. According to the interpreter, there were times when Falak did not understand what the lawyer intended or meant by certain instructions; in those situations, the interpreter would reexplain the lawyer's instructions. Otherwise, the translator testified, Falak understood the words as translated, and Falak never complained to him that he did not under-

---

[14] See *Johnson v. State*, 270 Ga. 234, 239 (4) (507 SE2d 737) (1998).
[15] See id.

stand what the translator was saying. In fact, after the trial, Falak wrote to the translator regarding another matter, and even asked him to translate for him again.

The trial court found that the translations were such that Falak was not denied his right to participate in a meaningful way in the proceedings. We agree. Falak has not shown reversible error in the trial court's denial of his motion for a new trial on this ground.

4. Falak contends the trial court erred in finding that he understood he had the right to decide whether to testify at trial. His argument is twofold: (1) he had difficulty understanding the translations regarding his right to testify, and (2) he only decided not to testify because he thought his wife and a psychologist were going to testify on his behalf. This enumeration presents no basis for reversal.

To the extent this argument raises the issue discussed in Division 3, it is without merit for the reasons set out in that Division. Moreover, the record does not support the argument.

The trial transcript shows that defense counsel, the interpreter, and Falak had several discussions on this point. When trial counsel announced to the court that Falak would not be testifying in the case, the trial judge asked Falak if it was true that he would not be testifying. A discussion was held off the record between Falak and the interpreter. The judge told the interpreter he needed to know what Falak was saying. The interpreter said Falak wanted his wife and the psychologist to testify, and that Falak was not answering the question. Defense counsel then requested and was permitted an opportunity to advise her client. A discussion between defense counsel, the interpreter, and Falak was held off the record. Falak then stated, through his interpreter, "I do not want to be a witness." The trial court asked Falak if he had enough time to discuss the matter with his attorney. Falak replied, through his interpreter, that he told his lawyer everything, that he was not going to be a witness, and that his lawyer is going to present the case for him. The court asked if anyone had forced him not to testify, to which Falak replied, again through his interpreter, "No, nobody." The court asked whether the decision was voluntary on Falak's part. Falak answered that it was. At a hearing on the motion for a new trial, defense counsel testified that she told Falak that it was his decision to make, and that she did not coach him about his response.

The trial interpreter testified that he accompanied defense counsel to the jail on several occasions before trial, and that he recalled defense counsel telling Falak that he had the right to testify, though counsel recommended that he not testify. According to the translator, Falak never indicated that he did not understand, and he reluctantly accepted counsel's advice on this point. The interpreter also recalled the trial judge explaining that Falak had the right to testify, and that

the interpreter translated the explanation to Falak at trial. The translator stated that Falak did not indicate that he had any difficulty understanding the matter.

Falak's contention that he decided not to testify because he thought other witnesses would testify instead does not demonstrate that he did not understand that he also had the right to testify. Understanding that one has a right to testify on his own behalf and knowing which witnesses will be called for the defense are two very different matters. The trial court did not err in denying Falak's motion for a new trial on this issue.

5. Falak contends he was denied effective assistance of trial counsel because his attorney failed to call as a witness Dr. James Powell, an expert in child sexual abuse and child psychology. At defense counsel's request, Dr. Powell reviewed the child's case file and the child's videotaped interview prior to trial and would have testified that: the child's testimony was inconsistent; the child displayed an inappropriate demeanor at times; the interviewer should have asked certain other questions in order to get more information about what happened; and the interviewer should have addressed inconsistencies and explored the issue of whether the child had anything to gain by making the accusations.

The record shows that the inconsistencies mentioned were explored at trial during the direct and cross-examinations of the child, the director of a refugee program, and the child's language teacher. The clinical director of a child abuse program, who interviewed the child on the videotape, discussed the child's demeanor and how it could be interpreted. And the child was cross-examined about any possible motives she might have had for accusing Falak of committing the offenses.

In addition, Falak's trial counsel testified that she had worked as a public defender for several years and that she tried many felony cases, including a child molestation case. She conducted discovery with the state, filed motions, gave an opening statement, extensively cross-examined the state's witnesses, and gave a closing argument. She investigated the case, met with Falak at the jail before trial, consulted with Dr. Powell, took Dr. Powell to the jail to meet with Falak, and talked to every witness suggested by Falak. Counsel subpoenaed Dr. Powell for trial, but decided the night before he was to testify, after speaking with Dr. Powell about how the trial was progressing, that she would not call him as a witness. Counsel believed that the state's case was not going well, that the victim had not been a good witness, that it would be risky to call the wife as a witness, and that it would be better to have closing argument than to present evidence. Counsel discussed this issue with Falak, through the interpreter.

The decisions on which witnesses to call are within the exclusive

province of the lawyer after consultation with his client.[16] Preserving final argument is considered sound trial strategy.[17] Because closing argument is a valuable right, the trial court was authorized to conclude that the preservation of that tactical advantage was a reasonable strategy for Falak's defense attorney to pursue.[18] We point out that Falak was acquitted of the aggravated child molestation charge. A strong presumption exists that Falak's lawyer provided him with effective representation.[19] Considering all of the circumstances, the trial court did not err in denying Falak's motion for a new trial based on ineffective assistance of counsel.·

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED MAY 27, 2003.

*Maria Murcier-Ashley*, for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Kristin M. Childers, Assistant District Attorneys*, for appellee.

---

[16] *Dewberry v. State*, 271 Ga. 624, 625 (2) (523 SE2d 26) (1999).
[17] *Harris v. State*, 274 Ga. 422, 427-428 (9) (554 SE2d 458) (2001).
[18] See *Dewberry*, supra.
[19] Id.