A03A2078. CHALVATZIS v. THE STATE.
(595 SE2d 558)

MIKELL, Judge.

George Gregory Chalvatzis was convicted of aggravated battery and aggravated assault by a Hall County jury. On appeal, he challenges the sufficiency of the evidence, his trial counsel's effectiveness, and the trial court's charge to the jury. For reasons stated below, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and an appellant no longer enjoys the presumption of innocence. This court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*[1] and does not weigh the evidence or determine witness credibility. Conflicts in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, we must uphold the jury's verdict.[2]

Construed in support of the verdict, the evidence shows that the alleged victim, Jacky Ray Hewell, and Chalvatzis were co-workers and that Hewell drove Chalvatzis home on the evening of December 21, 2000. Chalvatzis invited Hewell into his home and introduced him to his live-in girlfriend, Donna Fuller. Hewell testified that they all talked for several minutes and that Chalvatzis appeared distracted and upset and cried intermittently.

Hewell, Chalvatzis, and Fuller drank a bottle of whiskey. Hewell

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] (Footnotes omitted.) *Roberts v. State*, 242 Ga. App. 621 (530 SE2d 535) (2000).

and Chalvatzis mixed the whiskey with a soft drink, and Fuller, a self-confessed alcoholic, drank it straight from the bottle. Hewell testified that Fuller and Chalvatzis danced, and then Fuller asked Hewell to dance, which he reluctantly agreed to do after receiving Chalvatzis's permission. Hewell testified that he was reluctant because Chalvatzis had told him previously that he and Fuller were having problems.

The three went to a package store and purchased a second bottle of whiskey. On the way back to Chalvatzis's house, Hewell asked if Fuller had a friend who could be his date for the evening. The woman was unavailable, so they returned to the house and started drinking again. Hewell recalled that Fuller told him that the woman planned to come over later, so he decided to wait for her.

Hewell and Chalvatzis fell asleep on the couch and Fuller retired to the bedroom. Hewell testified that suddenly, Chalvatzis hit him above his left ear, then insisted that they take their dispute outside. As Hewell stepped off the porch, Chalvatzis stabbed him twice in the back of his left leg and once in his right leg. Hewell also testified that Chalvatzis cut his left arm, resulting in a wound that required 40 staples; that he never attacked Chalvatzis or otherwise provoked him but simply tried to escape to his car; and that the last wound that Chalvatzis inflicted was the one to his face after Chalvatzis pulled him from his car.

Deputy Sheriff Mitch Taylor of the Hall County Patrol Office testified that he found Hewell lying in a pool of blood; that Hewell was highly intoxicated; that he saw the cuts on Hewell's legs, arm, and face; that he followed the trail of Hewell's blood to Chalvatzis's house; that there was a substantial amount of blood in the driver's front seat and on the outside of Hewell's car; that he could hear a man and woman arguing inside the house who sounded intoxicated; that he knocked on the door and Chalvatzis and Fuller answered; that he talked to Chalvatzis outside and smelled alcohol on him; that he noticed an empty knife sheath on Chalvatzis's belt; that Chalvatzis did not indicate any involvement in the incident and did not appear to be injured; and that Chalvatzis agreed to go to the hospital with him for further questioning.

Officer Sean McKusker testified that Chalvatzis was very calm and cooperative but did appear to have been drinking; that he did not see any indication that Chalvatzis had been attacked; and that he saw a folded, bloodied knife in the bathroom and bloodstains around the rim of the sink, and blood on the outside knob of the front door.

Chalvatzis testified that he asked Hewell to spend the night or stay until he sobered up because he was concerned about him driving while intoxicated; that as he fell asleep on the couch, he saw Hewell get up; that he heard Fuller scream from the bedroom and when he

entered, he saw Hewell standing over Fuller; that he grabbed Hewell's shoulders to escort him from the house; that by the time he reached the door, Hewell was behind him and knocked him to the floor; that Hewell had him in a head lock and covered his head with a jacket; that he could not see or breathe; that he grabbed the folding knife that he used at work from the sheath on his belt and swung at Hewell with the knife, cutting him; and that they rolled off of the porch into the snow. Chalvatzis ran back into his home and locked the door, but because he had no phone, he left the house to call the police and found Hewell lying in a puddle of blood.

Fuller testified that after she went to bed, Chalvatzis entered and exited the room periodically and told her he would come to bed as soon as Hewell was sober enough to drive; that, at one point, he woke her up and told her that the police were coming; and that the next thing she recalled was the police waking her and telling her that someone had been stabbed.

1. In his first enumeration of error, Chalvatzis challenges the sufficiency of the evidence as to both convictions, arguing that there was no evidence presented to overcome his presumption of innocence or rebut his justification defense. We disagree.

A person commits an aggravated battery when he or she "maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof."[3] A person commits an aggravated assault when he or she assaults "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."[4] The testimony of both the victim and the defendant show that Chalvatzis stabbed Hewell with a knife. The fact that Chalvatzis and Hewell offered opposite accounts as to who initiated the fight is of no consequence on appeal because we do not speculate as to which evidence the jury chose to believe.[5] Instead, "[t]he credibility of witnesses and the weight to be given their testimony are questions for the trier of fact, and [we do not] determine or question how the jury resolved any conflicts in the evidence."[6]

These principles apply even though Chalvatzis raised justification as a defense. While we agree with Chalvatzis that "[a]fter evidence of self-defense is presented, the State bears the burden of dis-

---

[3] OCGA § 16-5-24 (a).
[4] OCGA § 16-5-21 (a) (2).
[5] *Davenport v. State*, 255 Ga. App. 593 (1) (565 SE2d 900) (2002).
[6] (Footnote omitted.) *Knowles v. State*, 245 Ga. App. 523, 524 (1) (538 SE2d 175) (2000).

proving that defense beyond a reasonable doubt,"[7] we reject his argument that the state failed to disprove his defense in this case. Whether Chalvatzis engaged in unprovoked attacks or acted in self-defense or in defense of Fuller was for the jury to resolve,[8] and it obviously resolved the question in Chalvatzis's disfavor. Accordingly, we find that the evidence was sufficient to authorize any rational trier of fact to find Chalvatzis guilty beyond a reasonable doubt of both offenses.[9]

2. Chalvatzis next argues that his trial counsel was ineffective for failing to object to the prosecutor's reference in closing argument to the September 11, 2001, terrorist attacks. The prosecutor stated:

> Now, ladies and gentlemen, believe it or not, tragically so, individuals sometimes attack other people for no good reason at all. For no good reason at all. I am only saying this for analogy because there's no comparison. There's absolutely no comparison. Okay? But there are some nuts in this world who fly planes into buildings for no legitimate reason but they manufacture one in their minds and then they act on them. You see? No comparison with that event to this one except that. Chalvatzis on this night, for whatever reasons he had, manufactured some necessity in his mind to strike out at Jacky Ray Hewell.

Chalvatzis argues that trial counsel's failure to object to this comment prejudiced him because the jury acted on its passions against the terrorists by convicting him. Again, we disagree.

"[I]n order to prevail on a claim of ineffectiveness of trial counsel, a defendant must show that his attorney's performance was deficient and that the deficiency prejudiced him such that a reasonable probability exists that, but for the attorney's errors, there would have been a different outcome at trial."[10] To satisfy the first prong of this test, Chalvatzis "must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct and that counsel's decisions were made in the exercise of reasonable professional judgment."[11] "Without trial counsel's testimony, it is extremely difficult to overcome this presumption,"[12] as the rea-

---

[7] (Citations omitted.) *Manning v. State*, 231 Ga. App. 584, 585 (3) (499 SE2d 650) (1998).

[8] Id.

[9] *Jackson v. Virginia*, supra.

[10] (Citations omitted.) *Butler v. State*, 273 Ga. 380, 384 (10) (541 SE2d 653) (2001).

[11] (Citations and footnote omitted.) *Madge v. State*, 245 Ga. App. 848, 851 (3) (538 SE2d 907) (2000).

[12] (Punctuation and footnote omitted.) *McPetrie v. State*, 263 Ga. App. 85, 92 (9) (587 SE2d 233) (2003).

sonableness of trial counsel's conduct must be examined from counsel's perspective at the time of trial.[13] In this case, there is no evidence in the record as to trial counsel's perspective because trial counsel did not testify at the hearing on the motion for new trial.

Our Supreme Court has held that "[a]nalogizing a defendant or a defendant's case to a well-known defendant or case is permissible during argument if the analogy is supported by facts in evidence."[14] The prosecutor repeatedly stated that he was not comparing Chalvatzis to the 9-11 perpetrators but was simply using the analogy to show that people sometimes act without provocation. While we certainly do not condone the use of this analogy so soon after the 9-11 tragedy, we cannot conclude that but for trial counsel's failure to object to its use, the jury would have acquitted Chalvatzis. Thus, this enumeration fails.

3. Lastly, Chalvatzis argues that the trial court erred when it omitted language from its charge on justification. The court gave the following charge, omitting the bracketed language, which Chalvatzis contends constituted error:

> If you find that the defendant's conduct was justified, this is a defense to prosecution for any crime based on that conduct. A person is justified in threatening or using force against another person when and to the extent that he reasonably believes that such threat or force is necessary to defend himself [or a third person] against the other's imminent use of unlawful force. . . . One who is not the aggressor is not required to retreat before being justified in using such force as is necessary for personal defense or in using force which is likely to cause death or great bodily harm if one reasonably believes such force is necessary to prevent death or great bodily injury to himself or a third person.

"The failure to give requested instructions in the exact language requested is not a ground for new trial where the charge given substantially covers the same principles."[15] The trial court's charge was adequate.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

---

[13] *Quintanilla v. State*, 273 Ga. 20, 21-22 (3) (537 SE2d 352) (2000).

[14] (Punctuation omitted.) *Mize v. State*, 269 Ga. 646, 654 (8) (501 SE2d 219) (1998), quoting *Carr v. State*, 267 Ga. 547, 555 (7) (a) (480 SE2d 583) (1997).

[15] (Citation omitted.) *Payne v. State*, 248 Ga. App. 158, 161 (3) (a) (545 SE2d 336) (2001).

Decided February 19, 2004.

*Bagwell & Corso, Arturo Corso*, for appellant.
*Jason J. Deal, District Attorney, Lee Darragh, Assistant District Attorney*, for appellee.