A05A1700. COCHRAN v. THE STATE.
(626 SE2d 217)

MIKELL, Judge.

Richard Allen Cochran appeals the denial of his motion for new trial following his conviction of aggravated assault. He challenges the sufficiency of the evidence and the propriety of the prosecutor's closing argument. We affirm for the reasons stated below.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and an appellant no longer enjoys the presumption of innocence. This court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia,* [443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)] and does not weigh the evidence or determine witness credibility. Conflicts in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the state's case, we must uphold the jury's verdict.[1]

So viewed, the evidence shows that the victim, Randall Coker, worked as a confidential informant ("CI") for the Whitfield County Sheriff's Office. Sergeant Paul Woods, who is assigned to the narcotics unit of that office, testified that at 10:30 p.m. on March 24, 2003, Coker brought Cochran to the office to introduce him to Woods so that Cochran could become a CI as well. According to Woods, both men wanted to participate in an undercover operation that evening, but

---

[14] (Citations omitted.) *Thomas,* supra at 534 (2).
[1] (Punctuation and footnotes omitted.) *Chalvatzis v. State,* 265 Ga. App. 699 (595 SE2d 558) (2004). See also *Hampton v. State,* 272 Ga. App. 273 (612 SE2d 96) (2005).

Woods would not allow Coker to work because he had been drinking. Woods told the men that they could work as CIs the following day as long as Coker had not been drinking. Woods testified that Cochran was sober but that Coker was an alcoholic.

Mark Greene testified that at 12:45 a.m. on March 25, he awoke to the sound of Coker banging on his door, screaming that he had been stabbed and asking Greene to call an ambulance. Greene called 911. Greene saw stab wounds on Coker's hands, arms, neck, and chest. Coker told Greene that Cochran had stabbed him.

The fire department responded to the 911 call. A supervisor, Lieutenant Kevin McDermott, testified that Coker was bleeding severely from multiple locations on his body. Coker was transported to the hospital, where Woods interviewed him. According to Woods, Coker stated that after he and Cochran left the sheriff's office, they drove to a residence belonging to a woman named Tara. She pulled a gun on them, and they left. Cochran was driving. A "heated conversation" ensued between the men, and Cochran threatened to kill himself and Coker. Cochran slammed on the brakes. Coker said he put his feet on the windshield to brace himself, and the windshield cracked. Cochran stopped the truck. Coker exited the vehicle and tried to cross the highway. As he did so, Cochran hit him from behind, then appeared in front of him and stabbed him repeatedly. Eventually, Coker escaped and ran to Greene's residence for help. Coker described the vehicle to Woods, who located it in front of a residence. Cochran was inside, and he was arrested. Woods found a pocket knife on Cochran's person.

Coker's trial testimony was consistent with his statement to Woods. Coker testified that he and Cochran had gone to Tara's home to set up a drug buy because she sold methamphetamine. When Tara refused to come to the door, Cochran went to her window and threatened to have "our boys," meaning the police, come over. Tara emerged with a shotgun. Cochran and Coker got in the truck and left. Cochran began driving erratically, swerving into the path of an oncoming car. Coker grabbed the steering wheel and told Cochran "to quit fooling around." Cochran then slammed on the brakes three or four times, throwing Coker forward. Coker had put his feet up on the dash, and they cracked the windshield. Cochran became angry, pulled off to the side of the road, and told Coker to get out of the truck. Coker testified that he got out and began walking across the street. Then he was either hit or stabbed on the side of his neck. As Coker turned around to see what hit him, Cochran started jabbing him with a knife. According to Coker, Cochran threatened to kill him. Coker ran for his life. He testified that he had 12 wounds that required sutures, stitches, and staples.

Cochran's brother, Randolph Lance Cochran, testified to a similar transaction that occurred on March 13, 2003, 11 days before the stabbing of Coker. According to Randolph, Cochran had been staying with him for about two weeks. Randolph asked his brother to move out; Cochran wanted to stay, and the brothers began to argue. The altercation became physical, and Randolph received an injury to his leg that required ten stitches. Randolph was cut in three places. The police were called, but Randolph declined to prosecute, and he testified that he was not sure how the wounds were inflicted. Coker testified that Cochran bragged about getting away with stabbing his brother.

Michelle Talley, who had had a relationship with Cochran, testified that he told her that he had stabbed Coker because of the way Coker had treated her friend, Rhonda Shutley. According to Talley, Cochran "told me to tell [Shutley] he paid that SOB back for what he done to her, and he's lucky he didn't die because next time he would make sure that he did when he got out."

Cochran testified to a different version of the events leading to the stabbing. He claimed that Tara was Coker's friend and that they went to her house at his request. Cochran further testified Coker knocked on her door for at least ten minutes and that Cochran urged him to quit and get in the truck. Tara came out with a weapon and told them to leave; one of the male residents of the house helped Cochran get Coker in the truck. As they were driving past a store, Coker asked him for money that he had given Cochran earlier for gas. Cochran refused, stepped on the brakes, and told Coker to get out. According to Cochran, that agitated Coker; he became verbally abusive and kept "stomping" the windshield until it shattered. Then Coker attacked him and "ran" him into oncoming traffic. Cochran stopped the truck; Coker got out and approached the driver's side door. Cochran used the door to push Coker off balance and then stepped out of the truck. Coker slammed him against the side of the vehicle. Cochran testified that Coker "was very much out of control," so Cochran started sticking him with his pocket knife. Coker said, "Oh, God, what did you do," and Cochran got in his truck and left.

1. In his first enumeration of error, Cochran argues that the verdict is not supported by the evidence. We disagree.

"A person commits the offense of aggravated assault when he or she assaults . . . with a deadly weapon . . . which, when used offensively against a person, is likely to or actually does result in serious bodily injury."[2] Here, the testimony of both Cochran and

---

[2] OCGA § 16-5-21 (a) (2).

Coker shows that Cochran stabbed Coker with a pocket knife. However, Cochran contends that the evidence is insufficient because he and Coker gave differing versions of the altercation that led to the stabbing. But

> [t]he fact that [Cochran] and [Coker] offered opposite accounts as to who initiated the fight is of no consequence on appeal because we do not speculate as to which evidence the jury chose to believe. Instead, the credibility of witnesses and the weight to be given their testimony are questions for the trier of fact, and we do not determine or question how the jury resolved any conflicts in the evidence.[3]

Moreover, as Cochran notes in his brief, the trial court gave his written request to charge on justification, which included informing the jury that the state had the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. Whether Cochran acted in self-defense when he stabbed Coker was a matter for the jury to resolve. As noted above, the jury is the sole judge of the facts and was entitled to disbelieve Cochran's testimony.[4] We find the evidence adduced at trial sufficient to authorize any rational trier of fact to find Cochran guilty of aggravated assault beyond a reasonable doubt.[5]

2. Finally, Cochran argues that the trial court erred in failing to grant his motion for a new trial based on a "misstatement" by the prosecutor during closing argument. During trial, Cochran had introduced into evidence Coker's 1993 guilty plea to aggravated assault. The victim of that offense testified as a similar transaction witness. During closing argument, the prosecutor stated, "the defense's only option in this case, [is] to make you disbelieve Mr. Coker. After all, folks, he's a convicted felon. Yeah, he is. . . . When did that happen? In 1992. 1992, twelve years . . . ago. Hadn't been in any trouble since."

The defense did not object to this argument. However, in his amended motion for new trial, defense counsel asserted that he had discovered that Coker had been arrested, indicted and tried for violent offenses since 1992 by the same district attorney's office that prosecuted Cochran. Therefore, defense counsel claimed that the prosecutor misled the jury when he argued that Coker had not been

---

[3] (Punctuation and footnotes omitted.) *Chalvatzis*, supra at 701 (1).
[4] Id. See also *Campbell v. State*, 258 Ga. App. 863, 866 (575 SE2d 748) (2002) ("question of self-defense is to be determined by the jury when there is conflicting evidence on the issue") (citation omitted).
[5] *Jackson*, supra.

in trouble since 1992. During the hearing on the motion, Cochran produced evidence that Coker had been prosecuted for violent crimes in 1996, 1997, and 1999. Coker pleaded nolo contendere to battery in 1996, was acquitted by a jury of multiple violent offenses in 1997, and pleaded guilty to family violence battery and simple assault in 1999. Cochran argued that even though the assistant district attorney who tried the case against him was not the same attorney who prosecuted Coker, the knowledge of the 1996, 1997, and 1999 prosecutions should be imputed to him. Cochran did not contend that the assistant district attorney was aware of Coker's prior difficulties. In denying the motion for new trial, the trial court held that Cochran was required to object to the alleged improper argument at the time it was made so that the court could have taken curative action. The court noted that Coker's prior difficulties were a matter of public record and could have been discovered by Cochran before trial.

The trial court was correct. As a general rule, a party must interpose an objection to an alleged error in order to preserve the issue for appellate review.[6] An exception is in cases of plain error, and Cochran seeks to invoke the "plain error" doctrine in this case. "Under the 'plain error' doctrine, we will consider issues not properly raised and ruled upon in the trial court when the alleged error is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or which seriously affects the fairness, integrity or public reputation of a judicial proceeding."[7] However, our Supreme Court has limited application of the "plain error" doctrine to capital cases[8] and to criminal cases in which the trial judge allegedly intimates an opinion of the defendant's guilt, in violation of OCGA § 17-8-57.[9] As the case at bar does not fall within either category, the "plain error" doctrine does not apply. It follows that Cochran has waived any issue on appeal regarding the prosecutor's closing argument by failing to object to it at trial.[10]

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JANUARY 18, 2006.

*Michael R. McCarthy, Bentley C. Adams III,* for appellant.

---

[6] See, e.g., *Harris v. State*, 279 Ga. 522, 525 (4) (615 SE2d 532) (2005).

[7] (Footnote omitted.) *Rambo v. State*, 266 Ga. App. 791, 794 (3) (598 SE2d 85) (2004).

[8] See *Mullins v. State*, 270 Ga. 450, 451 (2) (511 SE2d 165) (1999) (except in death penalty cases, defendant's failure to object to the state's closing argument waives any alleged error therein).

[9] See *Pittman v. State*, 273 Ga. 849, 850 (4), n. 2 (546 SE2d 277) (2001).

[10] See *Foster v. State*, 267 Ga. App. 363, 365-366 (3) (599 SE2d 309) (2004).

*Kermit N. McManus, District Attorney, Stephen E. Spencer, Herbert M. Poston, Jr., Assistant District Attorneys*, for appellee.