## A10A1658. VAUGHN v. THE STATE.
### (706 SE2d 137)

ANDREWS, Judge.

Christopher Vaughn appeals after a jury found him guilty of child molestation and sexual exploitation of children. Vaughn argues that the evidence was insufficient to support the verdict, that he received ineffective assistance of counsel, that the trial court erred in not allowing him to call a witness at trial, and that the trial court also erred in limiting his questioning of a witness at the hearing on his motion for new trial. After reviewing the record, we conclude there was no error and affirm.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence at trial was that Vaughn was living in the same house as the two victims, K. F. and D. J., during the time the crimes at issue were committed. K. F. was five years old at the time, and D. J. was two years old. Vaughn was a friend of Bart Jordan, who was the biological father of D. J. and the stepfather of K. F. The house belonged to Jordan's mother, and he and his brother David lived there with the two girls. For some months during the summer of 2004, Vaughn lived at the house and slept on the sofa in the living room.

David Jordan testified that in August he borrowed his mother's camera and, when he looked at pictures on a memory stick from the camera, discovered nude photographs of his nieces. Jordan told his mother about the pictures, and she reported them to the police.

At the forensic interview of K. F., she said that Vaughn had taken photographs of her and D. J. with their clothes off. She said that her sister was asleep and Vaughn took her clothes off and photographed her. Although K. F. was called to testify at trial, she stated that she

was scared and denied that anyone had ever taken her picture without her clothes on.

D. J., who was two years old at the time the pictures were taken and was four at the time of trial, testified that Vaughn touched her "private part." She also said that Vaughn had taken pictures of her and K. F. while they were taking a bath.

David Jordan testified that sometimes Vaughn would go to work with him to help out but stated that Vaughn did not go to work on June 16 and 21.[1] In addition, the owner of the company that David Jordan worked for testified that, after checking his records, Vaughn did not come in to work on June 16 or 21. Although Bart Jordan was not working and was watching the girls during the time period in question, Susan Jordan, the girls' grandmother, testified that Vaughn would sometimes tell her not to wake Bart as she was leaving for work, saying that he would look after the girls.

The clinical psychologist who treated both girls said that D. J. told her that Vaughn had taken pictures of her "butt" and touched her "butt." D. J. also said that Vaughn had taken pictures of K. F. and touched her "butt." In her discussions with K. F., the psychologist said that K. F. told her that Vaughn touched her "private part." K. F. also told her that she was scared to testify in court, saying "what if Chris gets on to me; he told me not to tell." The psychologist testified that throughout all the sessions with both girls, the girls were consistent in their recitation of what occurred and that Vaughn was the person who took the photographs and touched them.

Vaughn was charged with three counts of child molestation, two counts alleged that he had unclothed and engaged in a lewd exhibition of the genitals and pubic area of K. F. and D. J., and one count alleged that he had inserted his finger into the vagina of K. F. Vaughn was also charged with three counts of sexual exploitation of children in violation of OCGA § 16-12-100 (b) (5) for taking digital photographs of K. F. and D. J. that showed their genitals and pubic area.

1. Vaughn argues on appeal that the evidence was insufficient to support the sexual exploitation of children charge because, although the photographs had a day and time stamped on them, there was no month or year. Vaughn also argues that D. J. was only two years of age at the time of the alleged incidents and her testimony could not be believed. He points out that D. J. testified at trial that he took the photographs while she was in the bathtub, but the photographs do not show a bathtub. Further, Vaughn claims that there was no evidence that he was ever alone with the girls, and that at trial, K. F. stated that no one had taken pictures of her without her clothes. In

---

[1] Each image on the memory stick had the time and day of the month printed on it.

addition, he argues that the girls' testimony was at times erratic and, when interviewed by the Department of Family and Children Services shortly after the incidents were alleged to have taken place, the girls made no mention of them. He also points out that K. F. said he touched her while giving her a bath, and Bart Jordan's testimony was that Vaughn never gave the girls a bath.

"Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." *Herring v. State*, 263 Ga. App. 470 (588 SE2d 286) (2003). Moreover, the victim's testimony standing alone, is sufficient to support the convictions. *Vaughn v. State*, 301 Ga. App. 391, 392 (687 SE2d 651) (2009).

In this case, the girls' testimony, although it varied as to details, was consistent throughout that it was Vaughn who touched them and Vaughn who took the photographs. The interviewers said the girls did not appear to be coached. Although K. F. refused to testify at trial, she told the psychologist that she was afraid of Vaughn, and there was testimony that this was not uncommon in victims of abuse. Moreover, the jury viewed the forensic interview of K. F. and could make its own determination as to her credibility.

2. Vaughn also argues that the trial court erred in refusing to allow him to call a witness who was not disclosed to the State prior to trial. On the day of trial, defense counsel stated that she wanted to call the victim's mother to testify about another allegation of child molestation made by K. F. Defense counsel said she knew about the witness the week before but did not inform the State until just before the jury was being brought in on the morning of trial. The trial court asked defense counsel if she wanted a continuance, and she responded that she did not, but rather requested a "delay." The State objected and the trial court denied the request for a delay. Vaughn now argues that the trial court should have allowed the witness to testify because the State made no showing that it would be prejudiced by the mother's testimony and there was also no showing of bad faith on the part of defense counsel. Vaughn cites to OCGA § 17-16-6 which provides:

> If at any time during the course of the proceedings it is brought to the attention of the court that the [defendant] has failed to comply with the requirements of this article, the court may order the [defendant] to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the [defendant] from introducing the evidence not disclosed or

presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances. . . .

As previously stated, the trial court first asked defense counsel if she wanted a continuance, and she said she did not. Moreover, contrary to Vaughn's argument, the above Code section does not require the trial court to make a finding of prejudice or bad faith. "(I)n enacting OCGA § 17-16-6, the legislature did not impose a rigid formulation or grant an exclusive remedy . . . or a fatal consequence . . . for failure to comply with the discovery mandates. Instead, it cloaked the trial court with the discretion to use its own judgment to ensure a fair trial." (Punctuation omitted.) *Acey v. State*, 281 Ga. App. 197, 199-200 (635 SE2d 814) (2006).

*Hill v. State*, 232 Ga. App. 561 (502 SE2d 505) (1998), relied on by Vaughn, is not on point. In that case, defense counsel was unable to state what the expected testimony would be, and therefore there was no evidence from which the court could conclude that the defendant acted in bad faith or that the State would have been prejudiced. Id. at 563. Here, defense counsel stated what she expected the testimony to show. Counsel said that she had spoken to the mother and "learned through her a lot of history about the case, which I think is relevant to show the intentions of some of the State's witnesses. I also learned that there is a videotaped interview of one of the children where she has accused another man in Woodstock of committing the same act as she has accused my client of." Defense counsel then stated that she might need to do additional investigation depending on what the video revealed. The trial court questioned defense counsel about why she waited so late to interview the mother, why she did not notify the State as soon as she learned of the mother's evidence, and why she had not attempted to subpoena the videotape. The trial court then asked defense counsel twice if she wanted a continuance.

The trial court had sufficient information to determine whether the State would be prejudiced by the late disclosure of this witness and videotape. The requirement of prejudice to the State is satisfied because the State had no notice of the witness or the videotape until the day of trial and thus had no opportunity to interview the witness or view and investigate the videotape. *Acey*, supra at 200. The requirement of bad faith is satisfied because nothing in the record indicates that Vaughn did not know of this witness or videotape until the day of trial. Id. There was no abuse of discretion in the trial court's exclusion of this witness.

3. Vaughn also argues that the trial court erred in not allowing him to introduce evidence of a conviction of one of the State's witnesses. But as the State points out, the trial court reconsidered its

ruling, and defense counsel was able to tender the conviction. There is no merit to this enumeration.

4. Vaughn contends that he received ineffective assistance of counsel. "To establish ineffective assistance of counsel, [a defendant] must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984)[.]" *Gross v. State*, 262 Ga. 232, 233 (1) (416 SE2d 284) (1992). The test is whether there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel. *Gross*, supra. Further, Vaughn must overcome the strong presumption that defense counsel's conduct falls within the broad range of reasonable professional conduct. *Snyder v. State*, 201 Ga. App. 66, 70 (8) (410 SE2d 173) (1991). A trial court's finding that a defendant has not been denied effective assistance of counsel will be affirmed unless clearly erroneous. *Warren v. State*, 197 Ga. App. 23, 24 (1) (397 SE2d 484) (1990).

Vaughn first argues that counsel was ineffective for failing to challenge the competency of the child witnesses.

Notwithstanding the provisions of subsection (a) of [OCGA § 24-9-5], . . . in criminal cases involving child molestation, and in all other criminal cases in which a child was a victim of or a witness to any crime, any such child shall be competent to testify, and his credibility shall be determined as provided in Article 4 of this chapter.

OCGA § 24-9-5 (b). Here, the transcript shows that both girls were asked to demonstrate their understanding of the difference between the truth and a lie and both stated that they would tell the truth. Vaughn has given no basis upon which, had defense counsel challenged their competency, the trial court would have ruled the children incompetent to testify. Defense counsel is not required to make a meritless objection. *Sims v. State*, 281 Ga. 541, 543 (640 SE2d 260) (2007).

Vaughn also argues that counsel failed to call an expert witness to impeach the testimony of the child witnesses and the State's expert witnesses. In *Falak v. State*, 261 Ga. App. 404 (583 SE2d 146) (2003), a similar argument was made because, although counsel consulted with an expert witness, she decided not to call him. Id. at 409. This Court held that this was not ineffective because, among others, "the inconsistencies mentioned were explored at trial during the direct and cross-examinations. . . ." Id. at 409.

In this case, the transcript shows that defense counsel thoroughly cross-examined the experts on the techniques used to inter-

view the children. She also discussed the inconsistencies in her testimony with D. J.

*Goldstein v. State*, 283 Ga. App. 1 (640 SE2d 599) (2006), relied on by Vaughn, is not persuasive. In *Goldstein*, the State's experts' theories were, according to one expert, "inconsistent with any child she has ever examined or any report she has read in the medical literature." Id. at 8. That is not the case here. Accordingly, we conclude that Vaughn has failed to show that, but for counsel's failure to call an expert witness, there is a reasonable probability that the outcome of the trial would have been different.

Vaughn claims that trial counsel was ineffective for failing to do proper follow-up on other cases involving the child victims. This is incorrect. There was only one other instance involving the children, and the allegations were that their mother's new husband had touched them improperly while bathing them. There is no evidence in the record to show that the allegations were false, and it appears that this was a separate case in Cherokee County that was being investigated at the time of trial. Unlike *Gibbs v. State*, 287 Ga. App. 694, 697 (652 SE2d 591) (2007), relied on by Vaughn, the accusation here had not been shown to be false at the time of trial.

Vaughn also contends that counsel was ineffective for not objecting to expert witnesses' testimony as to the truthfulness of the child victims. Specifically, Vaughn objects to testimony about whether the child victims appeared to have been "coached." "[T]estimony by a witness that he did not see any evidence that the child victim had been coached did not constitute bolstering of the child's credibility and did not impermissibly address the ultimate issue." (Punctuation omitted.) *Towry v. State*, 304 Ga. App. 139, 143 (695 SE2d 683) (2010). Because this testimony was not objectionable, counsel was not deficient in failing to raise an objection. See *Sims*, supra at 543.

Vaughn claims that counsel was ineffective for failing to object to child hearsay. Vaughn does not cite us to any authority in support of this claim nor do we find any. Rather, as Vaughn acknowledges, the trial court held a hearing outside the presence of the jury for both witnesses who testified about statements made to them by the victims. After each witness testified, the trial court found that there was sufficient indicia of reliability to admit the hearsay statements of the victims. It follows that it was not necessary for defense counsel to make an objection in order to require a hearing on the admissibility of the statements. This allegation of ineffectiveness is totally without merit.

5. In his final enumeration, Vaughn argues that the trial court erred in limiting appellate counsel's questioning of an expert witness at the hearing on his motion for new trial. Vaughn contends that he

was prevented from showing what the testimony of the witness would have been had trial counsel called him to testify. Vaughn contends that without this testimony, he is unable to "perfect the record" and prove his contention that trial counsel was ineffective.

The transcript of the hearing shows that appellate counsel called this witness and questioned him about the techniques used to question young children and the reliability of a young child's testimony. The trial court decided to limit the testimony only when appellate counsel began asking specific questions about one of the interviews. Accordingly, there was sufficient evidence before the trial court to show what the expert's testimony would have been had defense counsel called him as a witness. There was no error.

*Judgment affirmed. Ellington, C. J., concurs. Doyle, J., concurs in the judgment only as to Division 2.*

## DECIDED FEBRUARY 9, 2011.

*Stanley W. Schoolcraft III*, for appellant.
*Scott L. Ballard, District Attorney, Robert W. Smith, Jr., Assistant District Attorney*, for appellee.